[Civ. No. 23219. Fourth Dist., Div. Two. Jan. 20, 1981.]

ROBERT A. CASTANEDA et al., Plaintiffs and Respondents, v. W. R. HOLCOMB, Defendant and Appellant.

COUNSEL

Taggart & Ziprick and Robert H. Ziprick for Defendant and Appellant.

Ralph H. Prince, City Attorney, and Robert W. Kelly, Deputy City Attorney, for Plaintiffs and Respondents.

OPINION

THE COURT.*—This is an appeal from a judgment in a declaratory relief action brought to construe a provision in the Charter of the City of San Bernardino. Defendant W. R. "Bob" Holcomb contends that the court below did not construe the provision correctly.

At issue is section 31 of the charter, which provides: "No order, resolution or ordinance shall have effect without approval of the Mayor, except when five (5) members of the Common Council concur in its adoption. In case of orders, the approval of the Mayor shall be presumed unless at the same meeting at which the order is passed, the Mayor causes his disapproval, with his reasons therefor, to be spread upon the minutes. All resolutions and ordinances after passage must be submitted to the Mayor who shall, within five (5) days after he has received the same, endorse his approval or disapproval thereon, giving the reasons for his disapproval. Each ordinance or resolution to be valid must be passed by a vote of not less than four (4) councilmen and approval by the Mayor, provided that if the Mayor fails to approve the same it may be passed by a vote of not less than five (5) Councilmen, and shall take effect as if approved by the Mayor."

The dispute arose on March 12, 1979, when a certain resolution number 79-100 was adopted by the vote of five of the seven members of the council, who are the plaintiffs in the present proceeding.[1] Defendant Holcomb, who was then mayor, disapproved the resolution. He has insisted that under section 31 of the charter the resolution thereby failed unless and until it is reconsidered and again passed by the vote of five

___

*Before Gardner, P. J., Tamura, J., and Kaufman, J.

[1]Resolution 79-100 is a notice of withdrawal from a joint powers agreement between the County of San Bernardino and the Cities of Chino, Colton, Fontana, Loma Linda, Montclair, Ontario, Redlands, Rialto, San Bernardino, and Upland to operate a public transportation system.

members of the council. ■ Plaintiffs, on the other hand, maintain that a resolution or ordinance passed initially by the vote of five council members does not require the mayor's approval to become effective and is not defeated by his disapproval.

Plaintiffs introduced evidence in the court below that their interpretation of section 31 is the one which city officials have followed during at least the past 25 years. That evidence included a declaration of the former city clerk stating that while she worked in the office of the city clerk, from July 1954 to September 1978, the city clerk always interpreted section 31 "to mean that an ordinance or resolution originally passed by five or more affirmative votes of the Common Council was not subject to disapproval of the Mayor." A declaration of the city attorney stated that his office had always interpreted section 31 in the same manner during his tenure as city attorney, from May 1959 to the present.

Plaintiffs also relied on an ordinance adopted in August 1978 by the affirmative vote of six members of the council (one member being absent) and approved by defendant in his capacity as mayor. The ordinance, No. 3751, provides for "the processing and effective dates of resolutions and ordinances adopted by the legislative body and disapproved or not approved by the mayor pursuant to city charter section 31." Of interest to the present proceeding, the ordinance provides: "In the event the Mayor or the Mayor Pro Tempore disapproves or fails to either approve or disapprove the resolution or ordinance within the five day period, the resolution or ordinance shall be deemed to be validly enacted on the date of its adoption and conclusively presumed to have been approved, provided there were five or more affirmative votes adopting said resolution or ordinance. . . . At the next meeting of the Mayor and Common Council any resolution or ordinance adopted by only four affirmative votes which has been disapproved or neither approved nor disapproved within the five day period shall be considered by the Common Council for readoption. . . ."

■ Rules of statutory interpretation are to be applied to charters. (*Currieri v. City of Roseville* (1970) 4 Cal.App.3d 997, 1001 [84 Cal.Rptr. 615].) ■ If the language of the provision is free of ambiguity, it must be given its plain meaning; rules of statutory construction are applied only where there is ambiguity or conflict in the provisions of the charter or statute, or a literal interpretation would lead to absurd consequences. (Code Civ. Proc., § 1858; *Younger v. Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014]; *In re*

*Andrews* (1976) 18 Cal.3d 208, 212 [133 Cal.Rptr. 365, 555 P.2d 97]; *Cadiz v. Agricultural Labor Relations Bd.* (1979) 92 Cal.App.3d 365, 372 [155 Cal.Rptr. 213]; *Teachers Management & Inv. Corp. v. City of Santa Cruz* (1976) 64 Cal.App.3d 438, 446 [134 Cal.Rptr. 523].)

Plaintiffs rely heavily on the following sentence in section 31: "No order, resolution or ordinance shall have effect without approval of the Mayor, except when five (5) members of the Common Council concur in its adoption." Viewed in isolation, the provision is very favorable to plaintiffs. It states that a measure not approved by the mayor is effective when adopted by a vote of five. Using the term "adopt" rather than "readopt" and making no reference to reconsideration, the sentence implies that a measure initially passed by a vote of five is effective regardless of the mayor's approval or disapproval.

Defendant relies on the third and fourth sentences of the same paragraph: "All resolutions and ordinances after passage must be submitted to the Mayor [for approval or disapproval]. Each ordinance or resolution to be valid must be passed by a vote of not less than four (4) councilmen and approval by the Mayor, provided that if the Mayor fails to approve the same it may be passed by a vote of not less than five (5) Councilmen, and shall take effect as if approved by the Mayor."

Defendant argues that if an ordinance or resolution passed by a vote of five was not subject to the mayor's disapproval, there would be no need to submit such measures to the mayor for approval or disapproval. As section 31 clearly states that *all* resolutions and ordinances *must* be submitted to the mayor, this must mean that disapproval is effective even when the measure initially received five votes. Defendant argues that the last sentence describes the procedure for reconsideration of a measure disapproved by the mayor. If, as plaintiffs contend, this procedure applied only to measures passed by a vote of four, defendant argues, the sentence would have indicated this limitation. Instead, the introductory clause refers to all resolutions and ordinances passed by a vote of "not less than four."

Each side, of course, proposes rebuttals to the arguments raised by the other side.

Defendant argues that the first sentence is merely introductory and is clarified by the later provisions, that the first sentence makes no explicit

reference to whether the vote of five precedes or follows the mayor's disapproval, and that the sentence is awkward because it tries to summarize in one sentence the rules for orders, on the one hand, and resolutions and ordinances, on the other, which are quite different. Also, it could be argued that the use of the word "adopt" rather than "pass" was deliberate, referring to the final act required to enact a valid measure.

Plaintiffs argue that the mayor's disapproval, supported by a written statement of reasons, serves an important function even when it does not prevent a measure passed by more than four votes from becoming effective. The disapproval may cause the council on its own initiative to reconsider and rescind the measure, or it may cause the public to seek a referendum. Plaintiffs argue that the last sentence should be read together with the first sentence of the paragraph so that each has independent significance and neither is useless or redundant. Plaintiffs maintain that this can best be done by construing the first sentence to mean that no reconsideration is necessary where a measure is passed by a vote of five or more, and by construing the last sentence to provide for reconsideration where a measure passed by only four votes is disapproved by the mayor.

■■■ From the foregoing review of the arguments presented by plaintiffs and defendant, it is apparent that the language of section 31 is ambiguous and in need of construction.

We note as a point in its favor that defendant's interpretation describes a veto power similar to that exercised by the President of the United States (see U. S. Const., art. I, § 7, cl.2) and the Governor of the State of California (Cal. Const., art. IV, § 10), whereas plaintiffs' interpretation describes a veto power limited in a manner which is at least unusual and perhaps unique. (See generally, 5 McQuillin, Municipal Corporations (rev. ed. 1969) §§ 16.35-16.47, pp. 181-199.) The only similar provision we have discovered is an obsolete law regarding municipal street assessments providing that resolutions ordering the work and approving the award "'shall be approved by the mayor or a three-fourths vote of the city council.'" (*McDonald* v. *Dodge* (1893) 97 Cal. 112, 113 [31 P. 909].)

On the other hand, the unusual nature of the limited veto power urged by plaintiffs is not unreasonable in the context of other provisions of the city charter. The Mayor of the City of San Bernardino is not, as

in general law cities, a voting member of the city council (see Gov. Code, §§ 34903, 36801-36803), but neither is the mayor an aloof executive, as in some of our larger charter cities. Rather, the mayor enjoys a hybrid position, presiding at city council meetings and participating in debates but without a vote other than the power to approve or disapprove measures passed by the council. As the mayor is able to, and probably does, voice objections to measures at the council meeting before the first vote is taken, it may be that the mayor's subsequent disapproval is so seldom successful in altering the opinions of council members that reconsideration of measures initially passed by a vote of five would inevitably result in the mayor's veto being overridden. Given the particular relationship between the mayor and the council established by the charter, therefore, it would not be unreasonable to provide for a limited veto, effective only in the case of measures passed by a bare majority.

Moreover, we cannot close our eyes to the evidence that city officials charged with carrying out the charter provisions have uniformly followed plaintiffs' interpretation.

Section 31 of the charter in its present form dates only from 1966. However, the ambiguity with which we are concerned is much older, and in fact dates from the original charter approved by the Legislature in 1905. The original charter provided for a council of only five members, so that three votes were needed to pass a measure and four votes to adopt it if disapproved by the mayor. Except for this difference in the number of votes, the provisions with which we are concerned were the same in the original charter. (See Stats. 1905, ch. XV, p. 940 et seq.) Although the evidence of interpretation by city officials introduced by plaintiffs refers only to the years from 1956 to the present, we may infer, in the absence of evidence to the contrary, that the same interpretation prevailed in earlier years.

■ "When an administrative interpretation is of long standing and has remained uniform, it is likely that numerous transactions have been entered into in reliance thereon, and it could be invalidated only at the cost of major readjustments and extensive litigation." (*Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405].) For this and other reasons, our courts have stated that consistent administrative construction of a statute over many years, particularly when it originated with those charged with putting the statutory machinery into effect, is entitled to great weight (*Gay Law*

*Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 491 [156 Cal.Rptr. 14, 595 P.2d 592]; *City of Los Angeles* v. *Public Utilities Com.* (1975) 15 Cal.3d 680, 696 [125 Cal.Rptr. 779, 542 P.2d 1371]), and courts will generally not depart from such a construction unless it is clearly erroneous (*Misasi* v. *Jacobsen* (1961) 55 Cal.2d 303, 308 [10 Cal.Rptr. 850, 359 P.2d 282]; *Allen* v. *California Toll Bridge Authority* (1977) 68 Cal.App.3d 340, 362 [137 Cal.Rptr. 493]).

The parties have provided us with no information regarding the number of ordinances and resolutions which have been generally deemed effective in years past upon the vote of five council members despite the mayor's subsequent disapproval. We assume that the number is significant. ■ As we are unable to state that plaintiff's interpretation, which has guided the city for so many years, is clearly erroneous, we conclude that plaintiffs' interpretation is correct and defendant's interpretation is incorrect. Thus we agree with the decision of the court below that resolution number 79-100 was validly enacted and that ordinance No. 3751 is not in conflict with section 31 of the charter.

Defendant has attached as an exhibit to his reply brief what purports to be an opinion of the city attorney dated February 8, 1973. Defendant maintains that this opinion supports his position and contradicts plaintiffs' evidence regarding the uniform interpretation of charter section 31 by city officials.

■ The function of an appellate court, in reviewing a trial court judgment on direct appeal, is limited to a consideration of matters contained in the record of trial proceedings, and matters not presented by the record cannot be considered on the suggestion of counsel in the briefs. (*In re Hochberg* (1970) 2 Cal.3d 870, 875 [87 Cal.Rptr. 681, 471 P.2d 1].) As the exhibit to the reply brief is not properly part of the record on appeal, and there is no indication it was before the court below, we must disregard it. Moreover, we observe that the purported opinion apparently was directed to somewhat different issues and its references to the question at issue here are oblique at best.

The judgment is affirmed.

Appellant's petition for a hearing by the Supreme Court was denied March 25, 1981.