[No. B130132. Second Dist., Div. Seven. Feb. 14, 2000.]

DONALD McPHERSON et al., Plaintiffs and Respondents, v.
CITY OF MANHATTAN BEACH et al., Defendants and Appellants;
HIGHLAND VIEW LIMITED PARTNERSHIP et al., Real Parties in
Interest and Appellants.

1254

**COUNSEL**

Rutan & Tucker, Jeffrey M. Oderman and Robert O. Owen for Defendants and Appellants and for Real Parties in Interest and Appellants.

Strumwasser & Woocher, Michael J. Strumwasser, Sean B. Hecht and Fredric D. Woocher for Plaintiffs and Respondents.

**OPINION**

**JOHNSON, J.**—This appeal is from a judgment granting a writ of mandate, commanding the City of Manhattan Beach (City) to rescind all permits for a beachside condominium project to the extent such permits authorized the construction to exceed the City's legislated height limitations. Both the City and the project's developer contend the City's approval of a tentative vesting parcel map in 1990 created a vested right to build the project in accordance with the older height limitations in effect in 1990. We hold any vested rights to build in accordance with 1990 height restrictions had expired with the developer's failure to timely record the final vesting parcel map. For this reason, and because we find plaintiffs and respondents adequately exhausted administrative remedies and timely filed the writ petition within the 90-day limitations period, we affirm.

FACTS AND PROCEEDINGS BELOW

On September 25, 1990, the City approved the application of real parties in interest Highland View Limited Partnership, Sam Burrescia and Allen Scarpetti (collectively Highland) for a vesting tentative parcel map and corresponding conditional use permit for the proposed construction of four new beachside condominiums on a double-sized lot. In January 1991, after the vesting tentative map was approved, new municipal code provisions took effect, lowering by several feet the maximum height limitations on such construction. On September 12, 1991, Highland submitted a final parcel map of the project to the city engineer. The city council approved the final parcel map on October 16, 1991, and on December 11, 1991, the map was delivered to the Los Angeles County Department of Public Works (Department). The map, however, was never submitted to the county recorder for recording. Instead, it was held in the Department's pending file awaiting Highland's payment of the requisite property taxes and submission of data on the monument inspection approval.

Over the next four years, Highland made no effort to pay the required taxes, submit the monument data, or take any other action to pursue development. Highland has since explained its inaction was due to the "crippling effects" of the recession on the local economy, which undermined the economic viability of the project.

In 1996, after the economy improved, Highland resurrected the project. It submitted the monument data, paid the delinquent taxes and on October 16, 1996, the final parcel map was recorded with the county recorder. The final recorded parcel map contained the following language: "ALL FUTURE CONSTRUCTION MUST COMPLY WITH ZONING REQUIREMENTS IN EFFECT AT THE TIME OF CONSTRUCTION."

In February 1997, Highland applied to the City for a new conditional use permit. The City's planning commission held four public hearings on the issue. At each hearing, plaintiffs and respondents McPherson and his Height Increase Repeal Committee (collectively McPherson) argued the use permit should be denied because the project plan violated current height limitations in the Manhattan Beach Municipal Code (MBMC.) As to Highland's assertion of a vested right to build in accordance with the 1990 height restrictions, McPherson argued any vesting rights had expired because the final map was not recorded until 1996. He referred to the California Subdivision Map Act to support his position, but did not cite any specific provisions of the MBMC.

The City approved the development under the old height restrictions in effect in 1990, when the tentative vesting parcel map was approved. McPherson's appeal to the city council was denied on September 2, 1997. At that hearing, the council was informed Highland was in the process of obtaining a certificate of correction to delete from the recorded map the paragraph requiring construction to comply with current zoning requirements, on the ground such language was inserted in error.

On November 26, 1997, McPherson brought this action for a writ of mandate and a preliminary injunction to stop construction and compel the City to rescind the use permit. The court denied the preliminary injunction but advised Highland it was proceeding with the project at its own risk until the court ruled on the writ petition.

During the course of the litigation, McPherson argued the City's grant of the use permit violated MBMC section 11.24.020 because any vested rights to build in accordance with the 1990 height limitations had expired when Highland failed to record the map within 36 months of the City's approval of the final map. The court took judicial notice of the MBMC, granted McPherson's motion to "correct the administrative record" to include the relevant portions of the MBMC, and granted the petition for writ of mandate on the ground any vested rights had expired for failure to comply with the recording requirements under MBMC section 11.24.020.

The City and Highland then brought a motion for reconsideration, attaching as new evidence a declaration from City planning employee Rosemary Lacklow, stating simply the City had interpreted MBMC section 11.24.020 (enacted in 1985) to be preempted under the act. The court denied the motion. The court entered its final judgment for McPherson on the writ petition, ordering the City to rescind its use permit and enjoining Highland from building in violation of current height restrictions.

The project has since been altered to comply with current codes. We previously denied McPherson's motion to dismiss this appeal as moot because issues of attorney's fees and proposed improvements to the project remain affected by the dispute. We now turn to the merits of the appeal.

## DISCUSSION

### I. *Highland's Rights Under the Vesting Tentative Parcel Map Had Expired Because the Final Map Was Not Timely Recorded.*

The City and Highland (collectively appellants) contend the court erred in ruling the vested rights to proceed in accordance with the height limitations in the 1990 approved vesting tentative map had expired under MBMC section 11.24.020 (section 11.24.020). Section 11.24.020 provides the "[f]ailure to file a parcel map with the County Recorder within thirty-six (36) months from the approval or conditional approval of such map shall terminate all proceedings."[1] Appellants concede they did not record the final parcel map within 36 months of the approval of the final parcel map. However, they assert section 11.24.020 is preempted under the Subdivision Map Act (the Act.)

The Act (Gov. Code, § 66410 et seq.) empowers the local government to regulate and control the design and improvement of subdivisions in a manner consistent with the Act's provisions. (Gov. Code, § 66411; *Golden State Homebuilding Associates v. City of Modesto* (1994) 26 Cal.App.4th 601, 606 [31 Cal.Rptr.2d 572].) The Act distinguishes between subdivisions of five or more parcels (for which a tentative and final map are required) and four parcels or less (such as the project in this case) for which a simpler parcel map is required. (Gov. Code, § 66426.) Procedures for processing, approving, and filing of parcel maps are governed exclusively by local ordinance, except where expressly provided in the Act. (Gov. Code, § 66463 subd. (a).)

The Legislature has left it to the local government to decide whether to require a tentative parcel map as a prerequisite to recording a final parcel map. (Gov. Code, § 66428 subd. (a).) Here, the City has chosen to require a tentative parcel map to be filed before a final parcel map may be approved and recorded. (MBMC, § 11.08.020.) By submitting a *vesting* tentative parcel map, a developer can secure a vested right to develop the property under the ordinances in effect when the tentative application is approved. (Gov. Code, § 66498.1; MBMC, § 11.76.100.)

---

[1] In 1998, the City deleted section 11.24.020 from the MBMC. The recent withdrawal of section 11.24.020 does not impact the issues on this appeal.

A. *The Time Limits for Recording in section 11.24.020 Are Triggered by the Approval of the Final Parcel Map, and Thus Are Not in Conflict with Provisions in the Act Relating to Tentative Maps.*

In contending the recording deadlines of section 11.24.020 conflict with the Act, appellants offer a two-part preemption argument. As a threshold matter, appellants claim the time limitations in section 11.24.020 are triggered by the approval of the tentative parcel map, not the final map. They argue such an interpretation is dictated by the term "conditional approval" in section 11.24.020, as only tentative maps can be conditionally approved.

The second part of appellant's preemption argument is dependent on the first. That is, only if section 11.24.020 applies to the approval of tentative parcel maps, do appellants claim it is preempted. In particular, asserting section 11.24.020 requires the final map to be recorded within 36 months of the approval of the tentative map, appellants complain section 11.24.020 effectively prohibits the City from granting the tentative map extensions expressly authorized in the Act. (See *Griffis v. County of Mono* (1985) 163 Cal.App.3d 414, 422 [209 Cal.Rptr. 519] [local ordinance limiting the duration of a tentative map extension conflicted with the Act's express provisions allowing extensions of tentative maps].) In addition, claiming section 11.24.020 requires recording within the "36 month life of the tentative," appellants contend section 11.24.020 directly conflicts with Government Code section 66463.5 subdivision (b) (under certain circumstances, subsequent actions of the local agency, including recording of the map, may take place after the tentative map expires).

█ In considering whether there is any conflict between section 11.24.020 and the Act, our first step is to look at the language of the ordinance itself. "If the language of the provision is free of ambiguity, it must be given its plain meaning; rules of statutory construction are applied only where there is ambiguity or conflict in the provisions of the charter or statute, or a literal interpretation would lead to absurd consequences." (*Castaneda v. Holcomb* (1981) 114 Cal.App.3d 939, 942 [170 Cal.Rptr. 875].)

█ We find section 11.24.020 to refer clearly and unambiguously to the approval of the final parcel map. There is no dispute the ordinance's reference to the filing of a parcel map with the county recorder must refer to a final parcel map, as only final maps are recorded with the county recorder. The ordinance requires the final map to be filed within 36 months of the "approval or conditional approval of *such* map." The plain meaning of the term "such" is the "character, quality, or extent previously indicated or implied." (Webster's Collegiate Dict. (10th ed. 1995) p. 1176.) It simply

strains all means of statutory interpretation to interpret the terms "such map" to refer to anything other than the final map referenced in the first part of the sentence.

Moreover, the term "conditional approval" does not alter the plain meaning of section 11.24.020. Contrary to appellants' contention, "conditional approval" is not reserved solely for tentative maps. Parcel maps may also be conditionally approved. (See Gov. Code, § 66463 subd. (a) ["Except as otherwise provided for in this code, the procedure for processing, approval, *conditional approval*, or disapproval and filing of parcel maps and modifications thereof shall be provided by *local ordinance*."(Italics added.)].) In fact, another of the City's own ordinances expressly allows for the "conditional approval" of a final map. (See, e.g., MBMC, § 11.36.020 [providing for dedication of land "as a condition of approval of a final map"].)

Looking at section 11.24.020 in context of the entire ordinance in which it was enacted further supports our view. MBMC section 11.24.010, adopted with the same ordinance which included section 11.24.020, provides the tentative map expires within 36 months of its approval. (MBMC, § 11.24.010).[2] It also allows for an extension of the tentative map for another 36 months. If section 11.24.020 were interpreted to require the final map to be recorded within 36 months of the initial approval of the *tentative* map, the two sections would be in direct conflict. Indeed, such an interpretation of section 11.24.020 would preclude the City from granting the very same tentative map extensions it expressly authorized in the immediately preceding MBMC section 11.24.010, as well as those authorized in the Act itself. (See *Griffis v. County of Mono, supra,* 163 Cal.App.3d at p. 422.) It simply makes no sense for the City to have adopted two directly conflicting code sections in the very same ordinance.

We note the terms "tentative map" and "tentative parcel map" appear throughout the MBMC, indicating the City knows when to use the term "tentative map" when it so desires. It did not do so here. We will not read into the code section an interpretation in contravention of its plain meaning,

---

[2]MBMC section 11.24.010 reads, in pertinent part: "Expiration of tentative map approval. A. *Expiration.* the approval or conditional approval of a tentative map shall expire thirty-six (36) months from the date the map was approved or conditionally approved. B. *Extension.* The person filing the tentative map may request an extension of the tentative map approval or conditional approval by written application . . . . C. *Time Limit on Extensions.* An extension or extensions of tentative map approval or conditional approval shall not exceed an aggregate of thirty-six (36) months."

particularly where to do so would create a conflict with the City's other code sections and with the Act.[3]

B. *There Is No Conflict Between section 11.24.020 and the Notice and Hearing Requirements of Government Code Section 66466.*

■ Appellants assert section 11.24.020 is invalid on its face even if it applies to final maps because it terminates development rights without affording the developer notice or a hearing. Under the Act, if the county recorder rejects the final map for filing it must provide notice of the rejection and a hearing to allow the subdivider to "present[] evidence that the basis for the rejection . . . has been removed." (Gov. Code, § 66466 subd. (b).)

We see no conflict between Government Code section 66466 and section 11.24.020. Government Code section 66466 requires notice and a hearing after the county recorder rejects a map for filing. In contrast, section 11.24.020 simply refers to the expiration of a map that is not timely filed with the county recorder. The mere expiration of a map due to a party's recording delay (as opposed to the rejection by the county recorder) does not require notice and a hearing under the Act. (See Gov. Code, § 66463.5, subd. (b).)[4]

C. *Highland's Vested Rights Also Expired Under the Express Provisions of the Act Due to Highland's Delay in Recording the Final Parcel Map.*

■ Finally, even without applying section 11.24.020, we would still find Highland's vested rights to proceed under the 1990 vesting tentative parcel map had expired under the provisions of the Act itself. The rights conferred under a tentative parcel map expire 36 months after its approval. (Gov. Code, § 66463.5, subd. (a); MBMC, § 11.24.010.) In September 1993, the Legislature extended the life of all tentative maps, including tentative parcel maps for another 24 months. (Gov. Code, § 66452.11, subd. (a).) Thus, appellants' vested rights remained in effect until September 1995, five years from the time the tentative was approved.

---

[3]Having interpreted section 11.24.020 to apply to final maps, we do not reach the second part of appellant's preemption argument.

[4]Not only is there no conflict on the face of the two laws, but also the notice and hearing requirements of Government Code section 66466 are inapplicable as applied to the facts of this case. It is undisputed the final parcel map was not filed with the county recorder until 1996, and was accepted at that time. As there was never any rejection of the map by the county recorder, the notice and hearing requirements of Government Code section 66466 were never triggered.

Ordinarily, the failure to record the final map prior to the expiration of the tentative terminates all proceedings. (Gov. Code, § 66463.5 subd. (b).) However, "[o]nce a timely filing is made, subsequent actions of the local agency, including . . . processing, approving and recording, may lawfully occur after the date of expiration of the tentative map. Delivery to the county surveyor or city engineer shall be deemed a timely filing for purposes of this section." (*Ibid.*) Though appellants concede the tentative expired before they recorded the parcel map in 1996, they argue their filing of the vesting final parcel map with the city engineer in 1991 preserved their rights under the tentative. We disagree.

The purpose of deeming delivery to the city engineer to be a timely filing was to "eliminate occasions where a subdivider must refile a tentative map because the *local agency* did not keep it moving through the approval process, and the validity period expired through *no fault of the subdivider.*" (Conf. Com., coms. on Assem. Bill No. 2740 (1985-1986 Reg. Sess.) p. 2, italics added.) Thus, so long as the developer fulfills its obligations, subsequent actions of the *local agency* can take place after the tentative expires (thereby protecting the developer from being prejudiced by the agency's delays).

Here, however, the map was recorded after expiration of the vesting tentative map not because of any action of the local agency, but because of Highland's own inaction. There is no claim the delay was caused by an action on the part of any agency. Rather, Highland failed to pay the taxes and provide monument inspection data, each of which is a prerequisite to recording. (Gov. Code, §§ 66492-66497.)

Under the unique circumstances of this case, we are compelled to hold the delivery of the final map to the city engineer did not constitute a timely filing for purposes of preserving vesting rights under the approved vesting tentative map. Though we recognize this is an issue of first impression, this interpretation is the only one which makes any sense and preserves the purpose of the statute. To hold otherwise would permit a developer to secure tentative vesting rights in perpetuity, simply by submitting the map to the city engineer while cleverly, or inadvertently, withholding payment of the requisite taxes. Indeed, under appellants' theory, appellants could have waited 10 years to pay the taxes necessary before recordation could occur and still have retained a vested right to proceed under the 1990 height limitations. A developer who fulfilled the recording prerequisites and submitted a recordable map, in contrast, would find the duration of his or her vesting rights limited to an additional year or two. (See Gov. Code,

§§ 66452.6, former subd. (g), 66498.5, subd. (b); MBMC, § 11.76.080 [once a map is recorded, the rights conferred by a vesting tentative parcel map last for one year, two years if it is extended].) We cannot subscribe to such an interpretation of the Act, which so clearly contravenes its purpose and leads to absurd results.[5]

II. *Having Raised the Issues of Timely Recording and Expiration of Vesting Rights at Every Administrative Proceeding, McPherson Adequately Exhausted His Administrative Remedies.*

■ Appellants complain McPherson failed to exhaust his administrative remedies because he never cited section 11.24.020 in any of the administrative hearings. The purpose of requiring exhaustion is to allow the agency to learn the contentions of the parties before litigation is instituted, and allow the agency the opportunity to act and render litigation unnecessary. (*Citizens Assn. for Sensible Development of Bishop Area v. County of Inyo* (1985) 172 Cal.App.3d 151, 163 [217 Cal.Rptr. 893].) It is not necessary to identify the precise statute at issue, so long as the agency is apprised of the relevant facts and issues. (*Save Our Residential Environment v. City of West Hollywood* (1992) 9 Cal.App.4th 1745, 1750 [12 Cal.Rptr.2d 308] [complainant's objections to the project, though not identifying the precise legal inadequacy, fairly apprised the city of the issues contested]; see also *East Peninsula Ed. Council, Inc. v. Palos Verdes Peninsula Unified School Dist.* (1989) 210 Cal.App.3d 155, 177 [258 Cal.Rptr. 147] [parties adequately exhausted administrative remedies by apprising board of the facts of its complaint even though they failed to cite the precise statute or the specific statutory language].)

Here, McPherson raised the issue of untimely recording and expiration of the vesting tentative parcel map at every administrative proceeding. This was sufficient to satisfy the exhaustion requirements, whether the issue is decided under section 11.24.020 or the statutory provisions of the Act.

III. *The Filing of the Writ of Mandate Within 90 Days of the Decision Granting the Conditional Use Permit Was Timely.*

■ Appellants assert the statute of limitations had run before McPherson filed his petition for writ of mandate. (See Gov. Code, § 66499.37 ["Any

---

[5]We do not hold an applicant must obtain tax clearance before delivery to the city engineer may constitute a timely filing. Certainly, we can conceive of circumstances where such clearance is in the province and control of the local agency. But, the actions necessary to obtain such clearances are within the control of the developer and must be satisfied before delivery to the city engineer can be deemed a timely filing, preserving the developer's rights after the tentative expires.

action or proceeding to attack, review, set aside, void, or annul the decision of an advisory agency, appeal board or legislative body action concerning a subdivision, or of any of the proceedings, acts or determinations taken, done or made prior to such decision, or to determine the reasonableness, legality or validity of any condition attached thereto shall not be maintained" unless such action is "commenced . . . within 90 days after the date of such decision."].) Appellants argue the 90-day statute began to run on October 10, 1996, the date the final parcel map was recorded. They reason the recording of the map "automatically and finally determine[d] the validity of such map and . . . impart[ed] constructive notice thereof." (Gov. Code, § 66468.)

The discretionary "decision" challenged in this writ proceeding was not the recordation of the map or the creation of the subdivision, but rather the grant of the conditional use permit relieving Highland from compliance with current height restrictions. Appellants fail to provide any authority demonstrating the recording of the map by the county recorder is a "decision" of an advisory agency, appeal board or legislative body rather than a nondiscretionary ministerial act. More importantly, the recording of the map did not impart constructive notice of the City's approval of the construction in violation of current height limitations. On the contrary, the recorded map stated the builder would comply with current zoning requirements. That language continued to impart notice of compliance with current height limitations at least until September 2, 1997, when the City was advised a certificate of correction was in the process of being recorded. This is the same date the City granted the use permit for the project. McPherson's filing of the writ of mandate on November 26, 1997, was thus well within the 90-day limitations period.

### IV. *The Trial Court Properly Denied Appellants' Motion for Reconsideration.*

 Finally, appellants challenge the denial of their motion for reconsideration, claiming Lacklow's declaration should have been considered as "new and different facts" under Civil Procedure Code section 1008, subdivision (a). A motion for reconsideration must be based on new or different facts, circumstances, or law. (*Ibid.*) "To merit reconsideration, a party must give a satisfactory reason why it was unable to present its 'new' evidence at the original hearing." (*Foothills Townhome Assn. v. Christiansen* (1998) 65 Cal.App.4th 688, 693, fn. 6 [76 Cal.Rptr.2d 516].)

Appellants claim they were precluded from presenting evidence as to their interpretation of section 11.24.020 because this municipal code provision

was not"part of the administrative record." The argument is really a corollary to their exhaustion argument, and we reject it for the same reason. We further note 11.24.020 figured prominently in the briefs and at the hearing on the writ petition. Appellants responded to the contention in their briefs and at the hearing, raising the same legal arguments they do here, but chose to wait until the court ruled on the issue to submit any evidence of the City's interpretation. Under these circumstances, Lacklow's testimony as to the City's interpretation of section 11.24.020 hardly qualifies as new evidence.

Moreover, even if the court were to consider Lacklow's declaration, the result would have been no different for the reasons we have explained. The meaning of section 11.24.020 was clear and unambiguous as a matter of law, making appellants' offer of extrinsic evidence as to the city planner's own interpretation irrelevant. (*Castaneda v. Holcomb* (1981) 114 Cal.App.3d 939, 942 [170 Cal.Rptr. 875].)[6] Furthermore, as we have held here, Highland's vested rights had expired not only under section 11.24.020 but also under the Act itself.

## DISPOSITION

The judgment is affirmed. Plaintiffs and respondents are awarded their costs on appeal.

Lillie, P. J., and Neal, J., concurred.

A petition for a rehearing was denied March 10, 2000, and the opinion was modified to read as printed above.

---

[6]Appellants insist the City's interpretation of its own laws are to be given great weight and substantial deference. (*City of Walnut Creek v. County of Contra Costa* (1980) 101 Cal.App.3d 1012, 1021 [162 Cal.Rptr. 224].) However, there was no evidence presented at the hearing on the writ petition as to the City's interpretation. The City's legal arguments as a party in the lawsuit are not evidence of the City's interpretation. Moreover, even if we were to consider Lacklow's testimony, we are still not bound by it. "While an administrative interpretation . . . will be accorded great respect by the courts and will be followed if not clearly erroneous" it is the " 'duty of this court to state the true meaning of the statute finally and conclusively,' " notwithstanding the agency construction. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 6-7 [78 Cal.Rptr.2d 1, 960 P.2d 1031].)