Filed 12/19/13  Cox v. County of San Bernardino CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| A.E. COX,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF SAN BERNARDINO,<br><br>        Defendant and Respondent. | E055169<br><br>(Super.Ct.No. CIVDS1013040)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  David Cohn, Judge.

Affirmed.

Christopher Kelley for Plaintiff and Appellant.

Jean-Rene Basle, County Counsel, and Alan L. Green, Deputy County Counsel,

for Defendant and Respondent.

### I.  INTRODUCTION

Plaintiff A.E. Cox appeals from judgment denying his petition for writ of mandate

seeking to require defendant County of San Bernardino (County) to pay him excess

1

proceeds[1] under assignments he received from the owners of two parcels of real property. Cox contends: (1) the County should be estopped from withholding the excess proceeds from one of the properties; (2) he is a party of interest under Revenue and Taxation Code[2] section 4675, and his claims were properly filed and supplemented with an assignment; (3) an initial claim does not require all supporting documentation, but merely places the County on notice as to the nature and amount of the claim; (4) his due process rights were violated because he did not receive notice of the hearing concerning the County Board of Supervisors' (Board) consideration of his excess proceeds claim; (5) he was denied equal protection because the County considered late claims of others differently; (6) he should be awarded attorney fees under Code of Civil Procedure section 1021.5 for pursuing public interest; (7) he should be awarded prejudgment interest; (8) the trial court erred by failing to take judicial notice of records of the Board that indicated the County violated his right to equal protection; (9) the motion for reconsideration was proper; and (10) the funds should not be forfeited to the County because of delay in submitting a written assignment. We find no error, and we affirm.

---

[1] "When real property is sold for delinquent taxes, the amount realized by the sale which is over and above the sums necessary to satisfy the taxes and cost of collection is termed 'excess proceeds.'" (*Fjaeran v. Board of Supervisors* (1989) 210 Cal.App.3d 434, 439 [Fourth Dist. Div. Two].)

[2] All further statutory references are to the Revenue and Taxation Code unless otherwise indicated.

2

## II.  FACTS AND PROCEDURAL BACKGROUND

### A.  Assessor's Parcel Number 0467-455-05

Assessor's Parcel Number (APN) 0467-455-05 (Parcel 05) was sold at a County tax sale on August 6, 2003.  At that time, Gary W. Franks was the owner of record of Parcel 05.  The sale generated $4,892.74 in excess proceeds, and on October 12, 2004, Cox filed a claim for those excess proceeds.  The County concedes the claim was filed within the statutory one-year period.  (§ 4675, subd. (a).)  On December 1, 2004, Cox submitted an assignment of rights to claim excess proceeds from Franks; the assignment was dated November 30, 2004, and notarized on December 1, 2004.

Kelly McKee, the County's tax sale manager, reviewed Cox's October 12, 2004, claim and found it contained no documentary foundation to establish his title and interest in Parcel 05 as of the filing date.  The claim stated that a notarized assignment of excess proceeds and an original deed would follow.  Because Cox did not demonstrate his interest in Parcel 05 as of October 12, 2004, McKee recommended that his claim be denied.  The Board denied the claim on June 22, 2010.

### B.  APN 0441-096-04

APN 0441-096-04 (Parcel 04) was sold at a County tax sale on August 5, 2004.  At that time, James L. Dundas was owner of record of Parcel 04.  The sale generated $23,374.82 in excess proceeds.  On September 19, 2005, Cox filed a claim for the excess proceeds from Parcel 04.

McKee reviewed Cox's claim and determined that Cox did not have a valid assignment of Parcel 04 because the August 23, 2004, grant deed from Dundas lacked

3

required content under section 4675, subdivision (b). McKee recommended that the claim be denied. The Board denied the claim on June 22, 2010.

### C. Proceedings on Petition for Writ of Mandate

Following the County's denial of his excess proceeds claims, Cox filed a petition for writ of mandate. The court held an evidentiary hearing "as to the issue of the County having a past history of 'waiving' the claim period and accepting late claims." (Capitalization omitted.) McKee testified that within the past 10 years, the County had approved and paid excess proceeds claims when the assignment was dated after the date of the claim; however, she knew of no instance in which the County had accepted a claim when assignment had occurred after the one-year limitations period had expired.

Following the hearing, the trial court denied the petition. The court found that the evidence showed "no past history of waiving or accepting late claims in the circumstances present herein (assignee not a party-in-interest/no assignment executed within the 1-year claim period). The court finds [Cox's] 'equal protection' argument to be unpersuasive." (Capitalization omitted.)

The court further found that "as to parcel #5 (the Franks parcel) [Cox] was not a party-in-interest when the claim was filed. The tax sale was 8/6/03, deed recorded 10/9/03 and the claim filed 10/12/04. At the time of the claim . . . Cox has no recorded interest in the property. His assignment to the property was executed 11/30/04. [¶] The court finds as to parcel #4 (Dundas parcel) that [Cox] received a grant deed from Mr. Dundas that was a nullity. Dundas was no longer the property owner when deed was executed. He had no rights to deed. The tax sale was 8/5/04, deed recorded 9/17/04 and

4

the 'deed' was granted from Du[n]das to Cox on 8/12/04, subsequent to the tax sale." (Capitalization omitted.)

On October 31, 2011, Cox filed a notice of intention to move for new trial and a motion for reconsideration. He also filed a request for judicial notice of documents that purportedly contradicted McKee's testimony at trial. He stated the documents showed it was "the County's regular custom, standard, and practice to accept assignments far beyond the statutory one-year claim deadline." The trial court declined the request to take judicial notice and denied the motions for reconsideration and new trial.

Additional facts are set forth in the discussion of the issues to which they pertain.

### III. DISCUSSION

#### A. Request for Judicial Notice

Cox has requested this court to take judicial notice of Board records pertaining to excess proceeds; Cox contends the records indicated the County violated his right to equal protection. Cox also requested the trial court to take judicial notice of those records, and the trial court declined to do so. Cox contends the records indicated the County violated his right to equal protection.

Cox contends the records of the Board are properly subject of judicial notice under Evidence Code sections 452, subdivision (b), 453, and 459. Regardless of whether the documents could properly have been judicially noticed here or in the trial court, we deny the request for judicial notice and find no error in the trial court's doing so because Cox merely makes conclusionary assertions about the contents of those documents and cites the collective 535-page mass of documents without providing any internal page cites.

5

For example, he contends the documents show that the County approved at least 87 claims when the assignment of the claim was submitted after the one-year deadline for filing a claim, but he provides no further analysis or explanation. It is not the function of this court—or of the trial court—to comb those materials without any guidance other than the conclusion he wishes us to draw to determine if the documents support his argument. (E.g. *Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 89.)

## B. Estoppel

Cox contends the County should be estopped from withholding the excess proceeds from the Dundas property.

### 1. Additional Background

The County's May 12, 2011, case management statement described the case as follows: "Cox has filed a Petition for Writ of Mandate seeking to recover excess proceeds from County's tax sale of certain real property, Assessor's Parcel Nos. 0467-455-05 (excess proceeds of $23,374.82) and 0441-096-64 (excess proceeds of $4,892.74.)" (Capitalization omitted.)

At the pretrial conference on May 24, 2011, counsel for Cox stated that the County had rejected Cox's proposed offer to settle. Counsel for the County stated, "The case involves excess sale proceeds from a tax sale. And one of the—concerning two parcels. One parcel really isn't disputed. Interestingly enough, that one is the more expensive of the two, it's $25,000 in controversy. That one the County is willing to concede. The other parcel is $5,000. That one Mr. Cox feels, for partnership reasons, he can't abandon. So, I think the—there is no real dispute of the facts. We could probably submit this on a

6

short cause of the pleadings and dispose of it that way. [¶] The entire question is: Mr. Cox's entitlement to the excess sale proceeds in relation to when he reported his grant deed as a successor to the owners of the property that are in default in comparison to when the tax sale date recorded. So it's a question of law." The trial court set the matter for "a short cause trial" on that issue.

The trial court's minute order for the pretrial conference stated, "The parties are close to settlement. One parcel is not in dispute, but the terms as to the second parcel are still being discussed." (Capitalization omitted.)

Cox filed his trial brief on September 30, 2011. He argued that the County had erred in denying his claim as to both parcels. With respect to Parcel 04, he set forth the chronology of events that he contended entitled him to the excess proceeds. He attached as an exhibit a document dated May 13, 2009, entitled "Attachment to Release Agreement Assignment of Rights to Claim Excess Proceeds From Sale of Tax-Defaulted Property," executed by Dundas. In his brief, he stated that "After this litigation commenced, the County came to a tentative agreement with [Cox] that the only claim remaining at issue is the claim [as to Parcel 05]."

The County filed its trial brief on October 6, 2011, one day before the trial. When trial began, the court announced its tentative ruling, including the proposed denial of the petition as to both Parcels 04 and 05. Cox's counsel never raised the issue of estoppel. Later during the hearing, the trial court again discussed both parcels, and again, Cox's counsel failed to raise the issue of estoppel. After the trial court denied his petition, Cox filed a motion for reconsideration, in which he contended it was unfair and prejudicial to

7

conduct the hearing on Parcel 04 "with one day's notice of the County's position and with no chance by [Cox] to brief or reply to the County's position."

### 2. Forfeiture

The County contends that because Cox failed to raise the issue of estoppel at the October 2011 trial, he has forfeited the argument on appeal. We will nonetheless exercise our discretion to address the issue on the merits.

### 3. Analysis

"'The essence of an estoppel is that one has, by false statements or conduct, led another to do that which he would not otherwise have done and as a result the other has suffered injury. [Citation.] The elements of an estoppel claim are: "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." [Citation.] Where the defendant is a government entity, a fifth element requires that the injury to the plaintiff's personal interest if the government is not estopped outweighs the injury to the public interest if the government is estopped. [Citation.]' [Citation.] Moreover, simple reliance on a false statement or conduct is not enough. In order to invoke the doctrine of equitable estoppel, the reliance must be reasonable. [Citation.]" (*Brown v. Chiang* (2011) 198 Cal.App.4th 1203, 1227.)

To establish estoppel, Cox was required to show, among other elements, that in reliance on the County's pretrial statement, he failed to raise a meritorious argument in the trial court. He has not done so; his arguments relating to Parcel 04 do not differ in

8

any meaningful way from those relating to Parcel 05. We therefore conclude Cox has

failed to show that he was injured in any manner by the County's position, and estoppel

does not apply.

### C. Party of Interest

Cox contends he is a party of interest under section 4675,[3] and his claims were

properly filed and supplemented with an assignment.

---

[3] Section 4675 provides:

"(a) Any party of interest in the property may file with the county a claim for the excess proceeds, in proportion to his or her interest held with others of equal priority in the property at the time of sale, at any time prior to the expiration of one year following the recordation of the tax collector's deed to the purchaser.

"(b) After the property has been sold, a party of interest in the property at the time of the sale may assign his or her right to claim the excess proceeds only by a dated, written instrument that explicitly states that the right to claim the excess proceeds is being assigned, and only after each party to the proposed assignment has disclosed to each other party to the proposed assignment all facts of which he or she is aware relating to the value of the right that is being assigned. Any attempted assignment that does not comply with these requirements shall have no effect. This paragraph shall apply only with respect to assignments on or after the effective date of this paragraph.

"(c) Any person or entity who in any way acts on behalf of, or in place of, any party of interest with respect to filing a claim for any excess proceeds shall submit proof with the claim that the amount and source of excess proceeds have been disclosed to the party of interest and that the party of interest has been advised of his or her right to file a claim for the excess proceeds on his or her own behalf directly with the county at no cost.

"(d) The claims shall contain any information and proof deemed necessary by the board of supervisors to establish the claimant's rights to all or any portion of the excess proceeds.

"(e) No sooner than one year following the recordation of the tax collector's deed to the purchaser, and if the excess proceeds have been claimed by any party of interest as provided herein, the excess proceeds shall be distributed on order of the board of supervisors to the parties of interest who have claimed the excess proceeds in the order of priority set forth in subdivisions (a) and (b). For the purposes of this article, parties of interest and their order of priority are:

"(1) First, lienholders of record prior to the recordation of the tax deed to the purchaser in the order of their priority.

*[footnote continued on next page]*

### 1. Parcel 05

The fundamental problem with Cox's position is that he was not a party of interest when he filed his claim. Section 4675, subdivision (e) defines parties of interest to include "lienholders of record prior to the recordation of the tax deed to the purchaser" and "any person with title of record to all or any portion of the property prior to the recordation of the tax deed to the purchaser." (§ 4657, subd. (e)(1)-(2).) Cox did not fit within either category. In *Azadozy v. Nikoghosian* (2005) 128 Cal.App.4th 1369, 1371, for example, the court held that the holder of an unrecorded title to property sold at a tax sale was not a party of interest within the meaning of section 4675, subdivision (e). Cox did not fit within either category defined in the statute, and when he filed his claim, he had not yet obtained any assignment of rights from a person who did qualify as a party of interest.

In short, no person who was a party of interest filed a claim within the statutory period, and Cox did not acquire any interest in Parcel 05 until after the statutory period had expired. The subsequent assignment to him did not retroactively make him a party of interest at the time he filed the claim.

---

*[footnote continued from previous page]*

"(2) Second, any person with title of record to all or any portion of the property prior to the recordation of the tax deed to the purchaser.

[¶] . . . [¶]

"(g) Any action or proceeding to review the decision of the board of supervisors shall be commenced within 90 days after the date of that decision of the board of supervisors."

### 2. *Parcel 04*

As to Parcel 04, Cox had obtained a grant deed that was invalid on its face to effect a valid assignment of interest from Dundas under section 4675, subdivision (b) Among other things, the grant deed did not "explicitly state[] that the right to claim the excess proceeds [wa]s being assigned . . . ." (§ 4675, subd. (b).) Thus, the attempted assignment, on its face, had "no effect." (*Ibid.*) As was the situation with Parcel 05, no person who was a party of interest filed a claim as to Parcel 04 within the statutory period.

### D. Sufficiency of Initial Claim

Cox contends an initial claim does not require all supporting documentation, but merely places the County on notice as to the nature and amount of the claim.

Section 4675 provides: "(d) The claims shall contain any information and proof deemed necessary by the board of supervisors to establish the claimant's rights to all or any portion of the excess proceeds." Cox argues, however, that "[t]his requirement is either exceptionally vague, subjecting potential claimants to the whim of the board of supervisors and providing no guidance as to what is required, or it is an admission that, once a claim is filed, a claimant may be required to provide additional information." While Cox's argument might possibly have merit if raised by a person who was indeed a party of interest who filed a timely initial claim, we need not address the issue because, as explained above, Cox has not shown that he was a party of interest within the meaning of the statute at the time he filed his claim.

11

### E.  Due Process

Cox contends his due process rights were violated because he did not receive notice of the hearing concerning the Board's consideration of his excess proceeds claim, and the County failed to provide notice of the tax sale to property owners.  The County contends that its action on Cox's claims was merely a ministerial act as to which no notice was required.

"'The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it."' [Citations.]" (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.)  However, the requirement of notice and a hearing applies "only [to] governmental decisions that are *adjudicative* in nature . . . ." (*Sustainability of Parks, Recycling & Wildlife Legal Defense Fund v. County of Solano Dept. of Resource Management* (2008) 167 Cal.App.4th 1350, 1359.)  The court explained, "[M]inisterial actions by government are generally not governed by these principles, because they are 'essentially automatic based on whether certain fixed standards and objective measurements have been met.' [Citation.]  'Where a statute requires an officer to do a prescribed act upon a prescribed contingency, his functions are ministerial.  Where a statute or ordinance clearly defines the specific duties or course of conduct that a governing body must take, that course of conduct becomes mandatory and eliminates any element of discretion.' [Citation.]" (*Ibid.*)

12

The distribution of excess proceeds fits the above definition of a ministerial act. Upon timely presentation of the claim of a party of interest, the Board has no discretion to deny a claim.

In his reply brief, Cox argues for the first time that a local rule of the County grants discretion to extend the filing deadline for presenting claims for excess proceeds. "[W]e do not consider arguments raised for the first time in a reply brief." (*Estate of Bonzi* (2013) 216 Cal.App.4th 1085, 1106, fn. 6.)

We further conclude that Cox lacks standing to raise the issue of the adequacy of notice of the tax sale as to the property owners. Cox's action did not seek to set aside the underlying tax sale.

## F. Equal Protection

Cox contends he was denied equal protection because the County considered late claims of others differently. He argues that the County admitted that at least once in the past 10 years it had approved and paid an excess proceeds claim when the assignment was dated after the date of the claim.

Cox further argues that the County approved at least 87 such claims "but refused to honor the policy" towards him. To support that assertion, he cites the 535 pages of County records of which he has unsuccessfully requested that we take judicial notice. He has not, however, identified any specific case in which a person who was not a party of interest filed a claim within the statutory period and was then later allowed to supplement a claim after acquiring an interest in the property. We conclude he has forfeited his claim.

13

**G. Attorney Fees**

Cox contends he should be awarded attorney fees under Code of Civil Procedure section 1021.5 for pursuing public interest. That statute authorizes fee awards only to successful parties. Because we deny Cox's claims on the merits, he has no entitlement to statutory attorney fees.

**H. Prejudgment Interest**

Cox contends he should be awarded prejudgment interest. As discussed above, we have determined Cox is not entitled to any recovery to which prejudgment interest could attach.

**I. Motion for Reconsideration**

Cox contends the motion for reconsideration was proper. He asserts he presented new evidence that the County routinely allows for assignments to be filed so as to complete claims that were filed within the statutory deadline.

*1. Additional Background*

An equal protection argument formed the basis for Cox's claim from the beginning. In his petition, he argued that it was the standard custom of the County to accept assignments that supplemented timely claims, and in situations similar to his, the County regularly allowed such assignments.

Cox's discovery requests raised the equal protection issue—he promulgated several requests for admission seeking, among other things, the County's admissions that it had in the past approved excess proceeds claims when the assignment was dated after the initial claim. Cox's trial brief raised the equal protection argument. Specifically, he

14

argued that the County had admitted that at least once in the previous 10 years it had approved and paid an excess proceeds claim when the assignment was dated after the date of the claim. He argued the County was "not applying the same set of rules to [him] as it admit[ted] applying to other claimants." In contrast, the County's brief did not address equal protection. At the trial, Cox's examination of McKee was directed toward determining the County's policies as to claims assigned after the initial clai[m]. At the trial, McKee testified that she "previously admitted that within the past ten years excess proceeds claims were approved and paid where the assignment was dated after the date of the claim." She further testified that to her knowledge, the County never "accepted any claims where the assignment of the excess proceeds occurred after the one-year limitations period had expired."

### 2. Analysis

A motion for reconsideration must be based on new or different facts, circumstances, or law (Code Civ. Proc., § 1008, subd. (b)), and a party seeking reconsideration of an order or ruling must satisfactorily explain why it could not present the "new" evidence at the original hearing. (*McPherson v. City of Manhattan Beach* (2000) 78 Cal.App.4th 1252, 1265.) In that case, the court rejected a party's claim that it was precluded from presenting evidence as to the meaning of a municipal code section because the code provision was not part of the administrative record. The court explained that the code provision "figured prominently in the briefs and at the hearing on the writ petition. Appellants responded to the contention in their briefs and at the hearing, raising the same legal arguments they do here, but chose to wait until the court

15

ruled on the issue to submit any evidence of the City's interpretation.  Under these circumstances, [a City planning employee's] testimony as to the City's interpretation of [the] section . . . hardly qualifies as new evidence."  (*Id.* at p. 1266.)

As recounted above, Cox himself raised the equal protection issue, and he cannot claim he was surprised by it.  He has failed to adequately explain why he did not produce all his evidence on the issue at the trial.  (*McPherson v. City of Manhattan Beach*, *supra*, 78 Cal.App.4th at p. 1266.)  The trial court did not err in denying the motion for reconsideration.

**J.  Forfeiture**

Cox contends the excess proceeds funds should not be forfeited to the County because of delay in submitting a written assignment.  He argues that "[t]he law disfavors forfeitures and statutes should be read and construed to prevent forfeiture."  He has not persuaded us that the general principle disfavoring forfeitures can excuse a failure to comply with statutory requirements for the presentation of a claim.

IV.  DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to Defendant.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


                         HOLLENHORST

                                  Acting P. J.

We concur:

     MCKINSTER
                    J.
     CODRINGTON
                    J.

16