[No. A096742. First Dist., Div. Three. Apr. 8, 2003.]

FRIENDS OF WESTHAVEN AND TRINIDAD, Plaintiff and Appellant,
v.
COUNTY OF HUMBOLDT et al., Defendants and Respondents.

COUNSEL

Klamath Environmental Law Center and William Verick for Plaintiff and Appellant.

Richard Davis Hendry, County Counsel; Harland Law Firm and Richard Anthony Smith for Defendants and Respondents.

OPINION

CORRIGAN, J.—Friends of Westhaven and Trinidad (Friends) appeals from a summary judgment in favor of the County of Humboldt and real party in interest Michael Moss interpreting provisions of the Subdivision Map Act (the Act). In this case of first impression, we reverse because we conclude the trial court misinterpreted the applicable statutes.

FACTUAL AND PROCEDURAL BACKGROUND

On November 20, 1997, the Humboldt County Planning Commission approved Moss's proposed tentative subdivision map. Friends appealed the approval and on December 2, 1997, the county board of supervisors (Board) rejected that appeal. On February 25, 1998, Friends petitioned for a writ of mandate to overturn the Board's decision. When respondents demurred, alleging that Friends had failed to exhaust its administrative remedies, the trial court sustained the demurrer and this court affirmed. (*Friends of Westhaven & Trinidad v. County of Humboldt* (Jan. 31, 2000, A085022) [nonpub. opn.].) We issued our remittitur on April 3, 2000.

On August 8, 2000, Moss, relying on Government Code[1] section 66452.6, asked the Board to stay expiration of the tentative map for the period that it was subject to litigation. The Board granted the request. Friends sought a writ of mandate and injunctive relief claiming that the Board's approval of the stay was an abuse of discretion in violation of section 66463.5 because the stay application was untimely. Respondents filed a motion for summary judgment, asserting that section 66463.5 authorized the stay. The trial court granted summary judgment, relying on the statutory interpretation advanced by respondents.

DISCUSSION

Summary judgment is granted when no triable issues of material fact exist and, as a result, the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review de novo the trial court's decision to grant summary judgment. Moreover, the dispositive question here is one of statutory interpretation, also subject to de novo review. (*Heavenly Valley v. El Dorado County Bd. of Equalization* (2000) 84 Cal.App.4th 1323, 1334 [101 Cal.Rptr.2d 591]; *Manibog v. MediaOne of Los Angeles, Inc.* (2000) 81 Cal.App.4th 1366, 1369 [98 Cal.Rptr.2d 297].)

Sections 66463.5 and 66452.6 of the Act both deal with the expiration of tentative maps in circumstances the differences between which are immaterial here. Friends sought relief under section 66463.5, while respondents contended the applicable provision was section 66452.6. However, the parties agreed below that, for purposes of this case, the analysis is the same under either section because both statutes have similar language and legislative history. In its ruling on summary judgment, the trial court referred

---

[1]All further statutory references are to the Government Code.

only to section 66463.5. To avoid confusion and cumbersome cross-references we do the same, recognizing that the same analysis would obtain under either provision.

■ The Act[2] is "the primary regulatory control governing the division of property in California and generally requires that a subdivider of property design the subdivision in conformity with applicable general and specific plans and to construct public improvements in connection with the subdivision. . . . Under the Act, requirements of the subdivider are enumerated, as are the corresponding duties of the local governing body. In many portions of the Act, specific time limits are set for action, and correlating consequences are established for failure to meet those time limits. [Citations.]" (*Hill v. City of Clovis* (2000) 80 Cal.App.4th 438, 445 [94 Cal.Rptr.2d 901].) Time limits and consequences apply to the duration of tentative maps. The Act "requires a two-step procedure to mapping: [a]pproval of a tentative map followed by approval of a final subdivision map by the local agency. The tentative map process gives the staff and the approving body (usually the planning commission) flexibility in suggesting acceptable changes to the subdivision before it is finally mapped." (Curtin & Merritt, Cal. Subdivision Map Act and the Development Process (Cont.Ed.Bar 2d ed. 2001) Determining Which Map Is Required, § 3.1, p. 54.) The approving agency, which in this case was the county planning commission, may grant or deny approval or conditionally approve a tentative map. (§§ 66452-66452.2.)

Once approval or conditional approval of a tentative map has been secured, the developer has a specific period of time within which to secure a final map. Subdivision (a) of section 66463.5 provides that the tentative map generally has a 24-month life.[3] The final map must be filed before the tentative map expires. Section 66463.5, subdivision (b) clearly states: "The expiration of the approved or conditionally approved tentative map shall terminate all proceedings and no parcel map of all or any portion of the real property included within the tentative map shall be filed without first processing a new tentative map." Thus it is essential that a developer file for a final map before the tentative map expires.[4]

---

[2](§ 66410 et seq.)

[3]This period may be extended by local ordinance for an additional 12 months. (§ 66463.5, subd. (a).) The record does not indicate, nor do the parties claim, that such an extension occurred here. We refer to the time allotted in subdivision (a) as a 24-month period.

[4]*McPherson v. City of Manhattan Beach* (2000) 78 Cal.App.4th 1252 [93 Cal.Rptr.2d 725], cited by Friends, concerned a subdivider who failed to pay taxes and provide certain data required before a final map could be recorded. The *McPherson* court, relying on section 66463.5, subdivision (b), noted that "[o]rdinarily, the failure to record the final map prior to

Section 66463.5, subdivisions (c) and (e) provide two ways in which the life of the tentative map may be expanded.[5] Under subdivision (c), a developer may apply to the approving agency for an extension of the tentative map's life. That extension may not exceed five years. Subdivision (c) explicitly requires that application for such an extension be made *before* expiration of the tentative map.

Section 66463.5, subdivision (e) addresses the effect of litigation on the life of the tentative map. Under subdivision (e) the life of the tentative map "shall not include the period of time during which a lawsuit involving the approval or conditional approval of the tentative map is, or was, pending in a court of competent jurisdiction, *if the stay of the time period is approved by the local agency pursuant to this section.*"[6] (Italics added.) Subdivision (e) does not explicitly require that a petition for a litigation stay be filed before the tentative map expires.

The issue here is whether Moss's application for a litigation stay was timely. The planning commission approved the tentative map on November 20, 1997. Under the 24-month period specified in section 66463.5, subdivision (a), Moss's tentative map expired in November 1999.[7] Litigation over the tentative map extended from February 28, 1998, when Friends filed its writ petition, to April 3, 2000, when we issued our remittitur. Moss did

the expiration of the tentative terminates all proceedings." Nevertheless, the court went on to consider the effect of a postfiling delay caused, not by the subdivider, but by the local agency. (*McPherson*, at pp. 1262-1264.) There is no assertion here that the local agency caused any delay. As a result, *McPherson* is factually distinguishable.

[5]Additionally section 66463.5, subdivision (d)(1) provides that the 24-month period shall not include the period of time during which a development moratorium is imposed after approval of the tentative map. The length of the moratorium shall not exceed five years. This provision is not at issue here.

[6]"Local agency" is defined in the Act as "a city, county or city and county." (§ 66420.) The full text of the section 66463.5, subdivision (e) is as follows: "The period of time specified in subdivision (a), including any extension thereof granted pursuant to subdivision (c), shall not include the period of time during which a lawsuit involving the approval or conditional approval of the tentative map is, or was, pending in a court of competent jurisdiction, if the stay of the time period is approved by the local agency pursuant to this section. After service of the initial petition or complaint in the lawsuit upon the local agency, the subdivider may apply to the local agency for a stay pursuant to the local agency's adopted procedures. Within 40 days after receiving the application, the local agency shall either stay the time period for up to five years or deny the requested stay. The local agency may, by ordinance, establish procedures for reviewing the requests, including, but not limited to, notice and hearing requirements, appeal procedures, and other administrative requirements."

[7]At the hearing on the motion for summary judgment, the parties disagreed as to the event triggering the 24-month period. Friends relied on November 20, 1997, while respondents argued that December 2, 1997, the date on which the board of supervisors denied the appeal and approved the tentative map, was the correct date. The distinction is not significant. Using either of these dates, 24 months had expired by the time Moss applied for a stay.

not request a litigation stay until August 8, 2000, four months after termination of the lawsuit and nine months after expiration of the original life of the tentative map. Friends contends that Moss's request for a stay should have been denied because the tentative map had already expired. In other words, Friends interprets section subdivision (e) as requiring that a litigation stay be requested before expiration of the original 24-month period. Moss, on the other hand, argues: "These statutes allow an application for an extension of a tentative map involved in litigation to be filed within a period consisting of 24 months from first approval plus the amount of time the map was the subject of litigation, but not to exceed five years. Moss's tentative map was the subject of litigation for 25 months. Therefore, the period of time allowable for Moss to apply for an extension would be 49 months from the date of his map's approval." In its briefing the county makes a similar argument. Under this analysis, Moss had until December 2001 to secure a litigation stay and thus his August 2000 application was timely.

█ "Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.]" (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].)

█ Respondents point out that under section 66463.5, subdivision (c), which allows a subdivider to request an extension of the 24-month period for reasons other than a lawsuit, application must be made "prior to the expiration of the approved or conditionally approved final map." They rely on the maxim of statutory construction that when a statute uses a particular term in one part and omits it in another, the omission typically signifies that the Legislature intended a different meaning. (*Louise Gardens of Encino Homeowners' Assn., Inc. v. Truck Ins. Exchange, Inc.* (2000) 82 Cal.App.4th 648, 657 [98 Cal.Rptr.2d 378]; *Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1504 [82 Cal.Rptr.2d 368].) With regard to subdivision (e), they argue that if the Legislature had intended that requests for stay be made before expiration,

the Legislature would have inserted the same language contained in subdivision (e).[8]

The flaw in respondents' interpretation is that subdivisions (c) and (e) of section 66463.5 do not address similar situations. Thus, while the "prior to expiration" phrase is appropriate to subdivision (c), it would not make sense as applied to subdivision (e). The life of the tentative map, if not otherwise extended, is 24 months. Any additional extension granted by the local agency pursuant to subdivision (c) expands and becomes part of the life of the tentative map. At the end of that particular period, the tentative map expires. The developer loses all rights to subdivide pursuant to that map and must start anew.

Section 66463.5, subdivision (e), on the other hand, concerns a "stay" of the life of the tentative map. A stay prevents expiration from occurring. Reading subdivision (e) in conjunction with subdivision (b), and giving words their usual and ordinary meaning, it follows that only an unexpired period can be stayed. Otherwise the tentative map becomes void and there is nothing left to stay. Adding the words "prior to the expiration of the approved or conditionally approved map" would create surplusage.

Moreover, respondents' interpretation of section 66463.5, subdivision (e) leads to an absurd result. ██ " 'Rules of statutory construction require courts to construe a statute to promote its purpose, render it reasonable, and avoid absurd consequences.' [Citation.]" (*Ford v. Gouin* (1992) 3 Cal.4th 339, 348 [11 Cal.Rptr.2d 30, 834 P.2d 724, 34 A.L.R.5th 769].) ██ The litigation stay contemplated by subdivision (e) is discretionary. Once application is made, the local agency "shall either stay the time period for up to five years or deny the requested stay." Moss argues that the statute "allow[s] a county to approve an application for extension of time on a tentative map as long as it was filed within 24 months *plus* the time the map was the subject of the litigation." Moss was involved in litigation for 25 months. Under his interpretation, he could apply for the stay any time during these 49 months, even waiting until the last possible month. Presumably during this period, no other developer could propose a subdivision on the same property. In effect, this interpretation confers a mandatory, rather than a discretionary, stay of the life of the tentative map, permitting the subdivider to retroactively secure reinstatement of a period that has already expired. We cannot conclude the Legislature intended such a result.

[8]Subdivision (c) predates subdivision (e). The original version of subdivision (c) was included in the statute as originally enacted 10 years before a version of subdivision (e) was added by amendment. (Stats. 1974, ch. 1536, § 4, p. 3480; Stats. 1984, ch. 337, § 4, p. 1616.)

Further, section 66463.5, subdivision (e) provides that once the application for a stay has been made, the local agency must grant or deny it within 40 days. This 40-day deadline is a further indication that the Legislature intended all parties to address the need for a litigation stay as promptly as possible.

Nor does respondents' reference to the legislative history assist them. Originally, section 66463.5, subdivision (e) required that application for stay involving a lawsuit be made "[w]ithin 10 days of the service of the initial petition or complaint in such lawsuit upon the local agency . . . ." In 1984, as part of Senate Bill No. 2157, both sections 66463.5 and 66452.6 were amended to delete the 10-day time limitation. (Stats. 1984, ch. 1302, §§ 3.5, 5, pp. 4474, 4476.) Respondents point to the Assembly Floor analysis, which states, "This bill . . . [a]uthorizes a subdivider to apply to the local agency for a stay any time after, rather than within 10 days after, the initial petition or complaint in the lawsuit is served upon the local agency." (Assem. Off. of Research, 3d reading analysis of Sen. Bill No. 2157 (1983-1984 Reg. Sess.) as amended Aug. 29, 1984, p. 2.) Moss notes that in a letter to the Governor requesting his signature on the bill, the author of the legislation explained: "Senate Bill 2157 removes the 10-day filing application for a litigation extension of a subdivision map, giving local agencies the discretion to grant an extension whenever the application is filed." (Sen. John Seymour, letter to Governor Deukmejian, Sept. 4, 1984, p. 1.)

Respondents argue the Legislature intended to give local agencies the power to approve a litigation stay so long as application is made during a period of 24 months plus the litigation time. We disagree. The same letter from Senator Seymour, cited by Moss, states: "This 10 day application requirement often places an unfair burden on both subdividers and local agencies, since it often takes more than 10 days to completely review and evaluate allegations made in a lawsuit." In its analysis of Senate Bill 2157, the Office of Local Government Affairs wrote: "[T]here have been several instances where an approved tentative map has expired because the subdivider failed to apply for a stay with[in] the 10 day time limitation. . . . [T]his is often due to the difficulty involved in evaluating a lawsuit within such a short period of time." (Off. of Local Government Affairs, Enrolled Bill Rep. on Sen. Bill No. 2157 (1983-1984 Reg. Sess.) Sept. 10, 1984, p. 3.)

The legislative history reflects an intention to give developers and the local agency more than 10 days to review and assess the lawsuit before deciding whether to stay the 24-month life of the tentative map. Nothing in the legislative material supports a conclusion that an application for a stay

may be made after the tentative map has expired. Our interpretation obliges developers to apply for a stay during the 24-month period, even if litigation is still pending. This requirement is consistent with the language of section 66463.5, subdivision (e) that speaks of time "during which a lawsuit . . . is, or was, pending . . . ." The empowerment of a local agency to approve a stay for up to five years is consistent with the recognition that litigation is sometimes a lengthy process. Finally, while the onus is put on the developer, this interpretation avoids the situation in which the local agency or another subdivider would hesitate to go forward, even though the 24-month period has expired, because the holder of that tentative map might later apply for a retroactive stay.

## CONCLUSION

Because Moss's application for a litigation stay was made after his tentative map expired, the application was not timely. For this reason, summary judgment was improperly granted and the judgment is reversed. Friends shall recover its costs on appeal.

McGuiness, P. J., and Pollak, J., concurred.