[No. A105590. First Dist., Div. Three. Jan. 14, 2005.]

BODEGA BAY CONCERNED CITIZENS, Plaintiff and Respondent, v. COUNTY OF SONOMA, Defendant and Respondent; BODEGA BAY SUNSET PROPERTY, Real Party in Interest and Appellant.

[No. A105787. First Dist., Div. Three. Jan. 14, 2005.]

BODEGA BAY CONCERNED CITIZENS, Plaintiff and Respondent, v. COUNTY OF SONOMA, Defendant and Appellant; BODEGA BAY SUNSET PROPERTY, Real Party in Interest and Respondent.

**COUNSEL**

Rose M. Zoia for Plaintiff and Respondent.

Steven M. Woodside, County Counsel, and Neil C. Baker, Assistant County Counsel, for Defendant and Respondent and Defendant and Appellant County of Sonoma.

Steefel, Levitt & Weiss, Judy V. Davidoff and Arthur J. Friedman for Real Party in Interest and Appellant and Real Party in Interest and Respondent Bodega Bay Sunset Property.

**OPINION**

**POLLAK, J.—**  Real party in interest Bodega Bay Sunset Property (Sunset) and defendant County of Sonoma (county) appeal from a judgment and peremptory writ of mandate directing the county to set aside its decision extending the expiration date of the tentative subdivision map for a residential housing project that Sunset is developing in the town of Bodega Bay. Appellants contend the trial court improperly interpreted section 66452.6 of the Government Code[1] to prohibit the county from approving Sunset's timely filed application for an extension. We agree that section 66452.6 authorized the county to act on the application even after the tentative map had expired. Accordingly, we reverse.

---

[1] All statutory references are to the Government Code.

## Factual and Procedural History

Romancia[2] is a residential development project located on approximately 27 acres in Bodega Bay, in Sonoma County. On December 6, 1994, the county adopted a resolution certifying the project's environmental impact report (EIR) and conditionally approving a coastal permit and tentative map for the subdivision.[3] Sunset thereupon began the work necessary to satisfy the conditions of the tentative approval. After a number of previously granted extensions, the tentative map was scheduled to expire on September 6, 2000.

On August 1, 2000, Sunset filed with the county's Permit and Resource Management Department a timely request for a one-year extension of the tentative map. Under section 66452.6, subdivision (e), the filing of the application automatically extended the tentative map for 60 days. Accordingly, the new expiration date for the map was November 6, 2000. The hearing on the application before the board of supervisors (the board), however, was set for November 28, 2000, and at that hearing, the board continued the hearing to December 5, 2000. Finally, on December 5, the board adopted a resolution extending the tentative map to September 6, 2001. The resolution concludes that "[t]here has been no change in the project or in the circumstances under which the project will be carried out that would warrant denial of the one year extension of time of the Tentative Map."

On February 16, 2001, the Bodega Bay Concerned Citizens (BBCC) filed a petition for a writ of mandate challenging the timeliness of the board's December 5 decision. The petition alleges that the board abused its discretion by approving the extension request after the expiration of the tentative map. Sunset demurred to the petition on the ground that it failed to state a cause of action, arguing that section 66452.6 expressly authorizes a county to extend a tentative map after its expiration date if the application for the extension is filed prior to the expiration date. BBCC disputed Sunset's interpretation of section 66452.6, arguing that once a tentative map expires all proceedings are terminated and the subdivider is required to file a new tentative map.[4]

On March 20, 2003, the court overruled the demurrer, concluding that the county did not have jurisdiction to act on December 5, 2000, when it

---

[2] Romancia was formerly called the Harbour View subdivision.

[3] An action challenging the validity of the EIR was resolved in a September 1997 decision of this court upholding the certification of the EIR. (*Bodega Bay Concerned Citizens v. County of Sonoma* (Sept. 17, 1997, A073252) [nonpub. opn.].)

[4] Without proper citation to the record, the parties explain that after briefing was complete but before the hearing on the demurrer, the proceedings were stayed because Sunset filed a petition for protection under chapter 11 of the Bankruptcy Act. The stay apparently was lifted in July 2002, and the trial court reset the demurrer for hearing.

extended the tentative map, because the map had already expired.[5] On December 11, 2003, the matter came to trial on the affirmative defense that under section 66451.1 Sunset and the county had mutually consented to the extension of the map until the December 5 hearing. On January 23, 2004, the trial court issued its statement of decision rejecting this defense and entered judgment in favor of BBCC.[6] Thereafter, the court issued a peremptory writ of mandate ordering the county to set aside its approval of Sunset's request for extension of the tentative map. Sunset filed a timely notice of appeal.

## Discussion

■ "The [Subdivision Map] Act is 'the primary regulatory control governing the division of property in California and generally requires that a subdivider of property design the subdivision in conformity with applicable general and specific plans and to construct public improvements in connection with the subdivision. . . . Under the Act, requirements of the subdivider are enumerated, as are the corresponding duties of the local governing body. In many portions of the Act, specific time limits are set for action, and correlating consequences are established for failure to meet those time limits. [Citations.]' [Citation.] Time limits and consequences apply to the duration of tentative maps. The Act 'requires a two-step procedure to mapping: [a]pproval of a tentative map followed by approval of a final subdivision map by the local agency. The tentative map process gives the staff and the approving body . . . flexibility in suggesting acceptable changes to the subdivision before it is finally mapped.' [Citation.] The approving agency . . . may grant or deny approval or conditionally approve a tentative map. (§§ 66452–66452.2.) [¶] Once approval or conditional approval of a tentative map has been secured, the developer has a specific period of time within which to secure a final map." (*Friends of Westhaven & Trinidad v. County of*

[5] The court's original order stated that the county's failure to act within the statutory deadline "operates as a denial by operation of law and is therefore appealable." Subsequently, on June 19, 2003, the court invoked its inherent power to clarify its order, explaining that the statement regarding appealability was made inadvertently, and it modified the order to state that the subdivider's only recourse was to file an application for approval of a new tentative map. Prior to the court's modification of the order, however, Sunset filed with the board an appeal from the planning department's "effective" denial of its request to extend the tentative map. On May 6, 2003, the board upheld the appeal and reinstated and extended the tentative map. The board resolution states, "[b]y its express terms, the Court's Order provides a right of appeal regarding the denial by operation of law of the Tentative Map. To the extent that the matter is properly before it, the Board believes that it is necessary and appropriate to reaffirm its exercise of discretion with respect to the request to extend the life of the Tentative Map." The validity of the board's action in sustaining the appeal is not raised by the present appeal to this court.

[6] Although Sunset challenges the trial court's ruling regarding the affirmative defense of mutual consent, it is unnecessary to address that issue as our interpretation of section 66452.6 provides an independent basis for reversal of the judgment.

*Humboldt* (2003) 107 Cal.App.4th 878, 882 [132 Cal.Rptr.2d 561], fn. omitted.) The expiration date of the tentative map may be extended by application to the county under section 66452.6, subdivision (e). Upon the filing of a timely application for extension, the tentative map is automatically "extended for 60 days or until the application for the extension is approved, conditionally approved, or denied, whichever occurs first." (§ 66452.6, subd. (e).)

■ In Sonoma County the board is charged with the responsibility for approving, conditionally approving or denying tentative maps, requests for extension, and final maps. The board exercises significant discretion with regard to the initial application for approval of a tentative map. "The decision of the advisory agency or the legislative body, as the case may be, may involve a total or partial approval, a conditional approval, or a disapproval of the map. The local agency can impose conditions that require the subdivider to construct specified public improvements and to post a bond to ensure their construction, or it can require the subdivider to dedicate a portion of his or her land for public purposes, or to pay a fee in lieu of dedication. It can control the design, construction, and location of streets and rights of way, and of drainage and sewerage facilities, and can require access to public natural resources. The local agency also can require the subdivider to modify the project to reduce adverse environmental effects caused by the development." (Miller & Starr, Cal. Real Estate (3d ed. 2004) § 25:172, p. 440, fns. omitted.) In the present case, the board held a number of public hearings on Sunset's application to approve the project and imposed 110 conditions on its approval.

■ Once a tentative map is approved, the county's discretion to deny an extension of the map is limited, and involves only a determination of the length of time to be granted. (*El Patio v. Permanent Rent Control Bd.* (1980) 110 Cal.App.3d 915, 928 [168 Cal.Rptr. 276] ["[S]ection 66452.6 expressly permits an extension only as to 'time.' There is no provision which suggests that the legislative body or advisory body is to reconsider its findings under section 66474 when granting an extension of time"].) Likewise, if there is a viable tentative map, approval of the final map by the county is essentially a ministerial act. (§ 66474.1 ["A legislative body shall not deny approval of a final or parcel map if it has previously approved a tentative map for the proposed subdivision and if it finds that the final or parcel map is in substantial compliance with the previously approved tentative map"]; *Youngblood v. Board of Supervisors* (1978) 22 Cal.3d 644, 655–656 [150 Cal.Rptr. 242, 586 P.2d 556] ["Once the tentative map is approved, the developer often must expend substantial sums to comply with the conditions attached to that approval. These expenditures will result in the construction of improvements consistent with the proposed subdivision, but often inconsistent with alternative uses of the land. Consequently it is only fair to the

developer and to the public interest to require the governing body to render its discretionary decision whether and upon what conditions to approve the proposed subdivision when it acts on the tentative map. Approval of the final map thus becomes a ministerial act once the appropriate officials certify that it is in substantial compliance with the previously approved tentative map"].)

In the present case, in order to comply with the conditions of the tentative approval, Sunset has expended over $2.5 million dollars on the project. It has completed significant improvements to the subdivision, including installation of all roads, a sewer system, and water supply. According to the majority owner of Sunset, the final map should have been ready for approval shortly before the trial in this case, the contractors were in place and the development was ready to proceed. The trial court's ruling, however, compelled Sunset to start the approval process anew.

■ The issue thus presented is whether under section 66452.6 the board was authorized, approximately one month after the expiration date of the tentative map, to approve Sunset's timely filed application for an extension of the tentative map. Interpretation of section 66452.6 presents a question of law that we review de novo. (*California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2004) 117 Cal.App.4th 350, 355 [12 Cal.Rptr.3d 12].) ■ " 'Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning. [Citation.] If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If, however, the statutory terms are ambiguous, then we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we " 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " ' " (*Friends of Westhaven & Trinidad v. County of Humboldt, supra,* 107 Cal.App.4th at p. 884.)

Section 66452.6 provides in relevant part: "(d) The expiration of the approved or conditionally approved tentative map shall terminate all proceedings and no final map or parcel map of all or any portion of the real property included within the tentative map shall be filed with the legislative body without first processing a new tentative map. Once a timely filing is made, subsequent actions of the local agency, including, but not limited to, processing, approving, and recording, may lawfully occur after the date of expiration of the tentative map. Delivery to the county surveyor or city engineer shall be deemed a timely filing for purposes of this section. [¶] (e) Upon application

of the subdivider filed prior to the expiration of the approved or conditionally approved tentative map, the time at which the map expires pursuant to subdivision (a) may be extended by the legislative body or by an advisory agency authorized to approve or conditionally approve tentative maps for a period or periods not exceeding a total of five years. The period of extension specified in this subdivision shall be in addition to the period of time provided by subdivision (a). Prior to the expiration of an approved or conditionally approved tentative map, upon an application by the subdivider to extend that map, the map shall automatically be extended for 60 days or until the application for the extension is approved, conditionally approved, or denied, whichever occurs first. If the advisory agency denies a subdivider's application for an extension, the subdivider may appeal to the legislative body within 15 days after the advisory agency has denied the extension."

■ These provisions authorized the county to approve Sunset's timely application for an extension of its tentative map after the map had otherwise expired. Section 66452.6, subdivision (e) does not expressly place a time restriction on the county's ability to act on an extension application. Subdivision (e) simply authorizes the board to extend the life of a tentative map and provides that the tentative map will expire if the county fails to act within the automatic 60-day extension period.[7] Section 66452.6, subdivision (d) prescribes the authority of the subdivider and the board to act after expiration of the tentative map. While the first sentence in subdivision (d) prohibits the subdivider from proceeding with the project after the tentative map has expired, *the second sentence states that* "[o]nce a timely filing is made, subsequent actions of the local agency, including, but not limited to, processing, approving, and recording, may lawfully occur after the date of expiration of the tentative map." (§ 66452.6, subd. (d).)

■ The trial court concluded that the second sentence of section 66452.6, subdivision (d) does not apply to a timely filed application for an extension of a tentative map, reasoning that the subdivision "applies to decisions regarding final tentative maps [*sic*].[8] It states that the expiration of a tentative map shall terminate all proceedings 'and no final map or parcel map . . . shall be filed without first processing a new tentative map.' In addition, subdivision (d) is separate from, and neither incorporated in nor referred to by, subdivision (e), which clearly is the provision governing the approval of a tentative-map

---

[7] In this respect our interpretation of subdivision (e) of section 66452.6 is consistent with the trial court's interpretation. The trial court explained that "[t]he plain meaning of [subdivision (e)] is that the tentative map will be extended for up until 60 days, unless the relevant public entity makes a decision within less than 60 days. If there is no decision within the deadline, then the map expires by operation of law."

[8] The Subdivision Map Act makes no reference to a "final tentative map" and we assume that the trial court intended to refer to a final map as distinguished from a tentative map.

extension."[9] We see no reason to read subdivision (d) so restrictively. The first sentence of subdivision (d) prohibits the subdivider from filing a final map after the tentative map has expired. The directive that "[t]he expiration of the approved or conditionally approved tentative map shall terminate all proceedings" presumably precludes the subdivider from filing not only a final map, but also a request for an extension of the tentative map or a request for a stay when the tentative map is no longer effective. (See *Friends of Westhaven & Trinidad v. County of Humboldt, supra,* 107 Cal.App.4th at pp. 885–887 [a subdivider must apply for a stay under section 66463.5, subdivision (e) prior to expiration of its tentative map].) The second sentence of section 66452.6, subdivision (d), however, authorizes the board to act on a "timely filing" after expiration of the tentative map. The statute is silent as to what filings may trigger the authority of the local agency to act, and it is not specific as to the type of actions that are thereby authorized after the expiration of the tentative map. However, the authority is expressed broadly and without limitation: "subsequent actions . . . , including, but not limited to, processing, approving, and recording . . . ." (*Ibid.*) The language of the statute does not compel an interpretation confining the board's authority to approval of a timely filed final map.[10]

■   Interpreting subdivision (d) of section 66452.6 to authorize the board to act on a timely filed application for an extension of a temporary map does not render the 60-day extension in subdivision (e) meaningless. As explained by the county, the automatic extension allows for additional time "within which a final subdivision map can be filed without the need for a decision by the legislative body on the extension. However, if a final map is not filed within the automatic extension period, the subdivider must then obtain formal approval of the extension application before it can file a final map."

■   Other provisions of the Subdivision Map Act (the Act) support the interpretation that subdivision (d) authorizes the local agency to extend the effectiveness of a preliminary map after it has otherwise expired. Section 66452.1 expressly requires the advisory agency to take action on the initial

---

[9] The trial court also mentioned that subdivision (d) "previously had included requirements that documents be filed pursuant to section 66457 which section clearly deals with final maps." We find no significance in the deletion of this provision from the statute.

[10] BBCC cites *Friends of Westhaven & Trinidad v. County of Humboldt, supra,* 107 Cal.App.4th at page 882, for the proposition that "[t]he second sentence of subdivision (d) presumes the timely filing of a final map, i.e., prior to the expiration of the tentative map." In *Friends of Westhaven & Trinidad,* however, the court was not considering whether the local agency had authority to grant a timely request for a stay of the running of the period to file a final map after that period had expired because the subdivider in that case had not filed a timely application. The page of the opinion cited by BBCC contains only a general discussion of the subdivision process and concludes with the warning that "it is essential that a developer file for a final map before the tentative map expires." (*Ibid.*)

application for approval of a tentative map "within 50 days after the filing thereof." Likewise, section 66452.2, requires a legislative body to approve, conditionally approve or disapprove a tentative map within either 30 days or 50 days depending on the authority of the county's building department. (See also § 66452.5, subd. (b) [appeal board must hold hearing on appeal from denial of tentative map within 30 days of filing and issue decision within 10 days of hearing].) In each of these instances, if the agency fails to act within the specified time limit the tentative map is deemed approved. (§ 66452.4, subd. (a) ["If no action is taken upon a tentative map . . . within the time limits specified in this chapter . . . the tentative map as filed, shall be deemed to be approved"]; § 66452.5, subd. (c).) The Legislature's imposition of time limits for local agency action on applications submitted under the Act, with the consequence of a failure to act within the prescribed time being automatic approval of the application, renders it highly unlikely that the Legislature intended the agency's failure to act on a timely application for an extension under section 66452.6 to result in the incurable denial of the application. Considering the broad discretion that the board exercises in approving an initial map and in approving requests for extensions, it is difficult to discern a plausible rationale for depriving the board of authority to approve a timely filed application for an extension because the board itself failed to act within the 60-day automatic extension provided in subdivision (e). The possible concern that the local agency not permit the subdivider to prolong the process and preclude other uses of the land indefinitely is addressed in subdivision (e) by limiting the aggregate period of extensions to five years.

The overarching purpose of amendments that were made to the Act in 1986 was to prevent a subdivider from losing its tentative map because of the local agency's delay in processing a timely filed final map. Under the prior statute, if the tentative map expired before the local agency processed its final map, the subdivider lost its tentative map and was required to apply for a new tentative map before proceeding. Accordingly, subdivision (d) of section 66452.6 was amended to authorize the local agency to act on a timely filing after expiration of the tentative map. (Assem. Off. of Research, Conf. Com. No. 1, Rep. on Assem. Bill No. 2740 (1985–1986 Reg. Sess.) as amended Aug. 21, 1986, p. 2. ["The bill will also eliminate occasions where a subdivider must refile a tentative map because the local agency did not keep it moving through the approval process, and the validity period expired through no fault of the subdivider"].) The automatic 60-day extension in subdivision (e) for acting on a request for an extension was added "[b]ecause of the amendments in Assembly Bill 2674, [which made it] necessary to provide for a temporary extension so tentative maps do not expire because it is no longer possible to agenda them as quickly as it was prior to Assembly Bill 2674." (James P. Corn, mem. to Assem. Bill No. 2740 conferees, dated Aug. 18, 1986.) Although none of this legislative history is definitive with

respect to the intended application of the second sentence of subdivision (d) to extension applications, it does confirm the underlying intention of the Legislature that subdividers not be penalized for the county's failure to act in a timely manner on applications under the Act that are timely filed by the developer. Our attention has not been directed to any indication that the Legislature intended to differentiate applications for extensions of the tentative map in this respect.

*Griffis v. County of Mono* (1985) 163 Cal.App.3d 414 [209 Cal.Rptr. 519], further supports an interpretation of the statute that recognizes the authority of the local agency to act on a timely application even after the date of its expiration. In *Griffis*, the court held that "a tentative map [shall] be 'deemed extended' when an appeal involving a map extension is not timely acted upon." (*Id.* at p. 429.) The court recognized that the express statutory language of section 66452.5 states only that a tentative map shall be "deemed to be approved" if the legislative body fails to act on an appeal within the prescribed time, but concluded that the "evident legislative policy of section 66452.5, subdivision (c)" required that the statute be construed so that the tentative map be deemed extended if the legislative body fails to act on an appeal from the denial of a request for extension within the prescribed time. (*Griffis, supra*, at pp. 428–429.) The court noted that section 66452.5 "plainly reflects the Legislature's desire that decisions involving subdivision approvals be made expeditiously. The concern undoubtedly reflects the Legislature's awareness of the substantial costs of development and of the effects of delay on those costs. The statute provides for automatic map approval in the circumstances prescribed, thereby allowing the developer to proceed if an appeal is not timely adjudicated." (*Griffis, supra*, at p. 429.) We can conceive of no possible rationale for recognizing that a subdivider who appeals the denial of an extension application obtains an automatic extension if the county fails to act on the appeal, but that the county's failure to act on the application in the first instance results in the irremediable extinguishment of the temporary map.

Hence, the board retained the authority, after expiration of the time within which Sunset was authorized to file the final map, to grant its timely application for an extension of that period so long as the aggregate five-year period was not exceeded. The writ of mandate directing the board to vacate its approval of Sunset's application should not have been granted.[11]

---

[11] BBCC's request for judicial notice of Sunset's application for a new tentative map is denied as irrelevant.

## Disposition

The judgment is reversed. Sunset shall recover its costs on appeal.

McGuiness, P. J., and Parrilli, J., concurred.

The petitions of respondent Bodega Bay Concerned Citizens and real party in interest Bodega Bay Sunset Property for review by the Supreme Court were denied April 13, 2005.