Filed 10/21/14  Gdowski v. City of Palo Verdes Estates CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| DIANA GDOWSKI, | B249024 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC481843) |
| v. | |
| CITY OF PALOS VERDES ESTATES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Abraham Kahn, Judge.  Affirmed.

Cox, Castle & Nicholson and Stanley W. Lamport for Plaintiff and Appellant.

Jenkins & Hogin, Christi Hogin, City Attorney, and Tarquin Preziosi, Assistant City Attorney, for Defendant and Respondent City of Palos Verdes Estates.

Palmieri, Tyler, Wiener, Wilhelm & Waldron and Charles H. Kanter for Defendant and Respondent Acalones, LLC.

_____

For nine years Diana Gdowski has opposed the construction of a single family residence on a vacant lot across the street from her home on Via Acalones in the City of Palos Verdes Estates (City). In this third appeal Gdowski contends the trial court erred in sustaining without leave to amend the City and developer Acalones, LLC's demurrer to her amended complaint for declaratory and injunctive relief. She argues the court prematurely decided the merits of the action, which necessitated interpretation of the City's neighborhood compatibility ordinance, and, in any event, the court's interpretation is wrong. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Allegations of the First Amended Complaint*

On December 6, 2012 Gdowski filed a first amended complaint seeking both a declaration that the 2008 neighborhood compatibility approval for the proposed two-story home across the street from her residence had expired and an injunction preventing any construction until a new neighborhood compatibility approval was obtained.

The amended complaint alleged "spec builder" Michael Aulert had purchased the vacant lot in 2004. In April 2005 the city council approved Aulert's application for a neighborhood compatibility approval despite opposition from all of the surrounding property owners.[1] The city council's decision was based on a factual presentation by the mayor after the public hearing had closed, and the city council denied Gdowski an opportunity to respond and demonstrate the presentation was misleading. Gdowski petitioned for writ of mandate on the ground she had been denied a fair hearing. The trial court granted the petition. We agreed Gdowski had been denied a fair hearing in *Gdowski v. City of Palos Verdes Estates* (Jan. 7, 2008, B193709) [nonpub. opn.] (*Gdowski I*), but reversed and remanded to modify language in the judgment limiting the scope of the rehearing.

---

[1] Although Gdowski also challenges a grading approval, we refer only to the neighborhood compatibility approval, the gravamen of her action, for clarity and convenience.

2

In a resolution adopted on July 22, 2008 after a new hearing, the city council again approved Aulert's neighborhood compatibility application, finding the proposed home did not interfere with Gdowski's view because the property was a vacant lot, Gdowski's existing view was obstructed by foliage and the proposed design included a view corridor. Gdowski petitioned for a writ of mandate on the ground there was no basis for the view findings. The trial court denied the petition; we affirmed in *Gdowski v. City of Palos Verdes Estates* (Oct. 6, 2010, B217417) [nonpub. opn.] (*Gdowski II*).

The December 2012 amended complaint alleged the July 2008 neighborhood compatibility approval expired in July 2010 because neither Aulert nor Acalones, which purchased the vacant lot in 2011 from Aulert, had obtained a building or grading permit within two years of the city council's approval as required by Palos Verdes Estates Municipal Code (PVEMC) section 18.36.050. PVEMC section 18.36.050 provides, "The applicant shall have a maximum of two years after approval of a neighborhood compatibility application within which to apply for and be issued a grading or building permit. The compatibility approval shall expire in the event such grading or building permit has not been issued within the prescribed two-year period, or in the event such grading permit or building permit terminates or expires under any other provision of this code of the law of this state." The amended complaint further alleged PVEMC section 17.04.100.H makes clear the city council decision (that is, the approval of the neighborhood compatibility application) is final: "The city council may approve, approve with conditions, or disapprove the application in accordance with applicable criteria and requirements specified by law for the particular development entitlement, and shall render its decision within thirty days after the conclusion of hearing. . . . The decision of the city council shall be final." According to the amended complaint, notwithstanding "the plain and unambiguous meaning of the two ordinances" that the approval expired in July 2010, the City was processing an application for a grading and building permit to construct the project.

The amended complaint further alleged the City had asserted the two-year life of the neighborhood compatibility approval was tolled or extended until the litigation

3

challenging the approval had been completed to allow Aulert to sell the property to Acalones without the need for a new review of the proposed residence under current conditions.[2] Gdowski also alleged, on information and belief: 1. "[T]he City has never previously extended, suspended or tolled the expiration period in the Expiration Provision for any reason and has not previously claimed that the expiration period in the Expiration provision may be extended, suspended or tolled for any reason." 2. "The City has not adopted any policy regarding the construction of the Expiration Provision in circumstances involving litigation . . . ." 3. "[T]he City has not previously interpreted the Compatibility Ordinance and the Expiration Provision in the manner that the City asserts in this lawsuit."

2. *The Demurrer and the Court's Ruling*

The City, joined by Acalones, demurred to the amended complaint, contending the two-year effective life of a neighborhood compatibility approval does not begin to run until litigation challenging the approval is completed and its certainty is no longer in question—in this case December 2010 when the remittitur issued in *Gdowski II*. The City argued its interpretation was consistent with the plain language of the ordinance and "firmly rooted in common sense and sound public policy": If the period begins running on the date the city council took action, even though a petition for writ of mandate has been filed challenging that action, an applicant will be forced to incur the cost of obtaining permits and performing substantial construction to acquire a vested right inasmuch as resolution by the appellate court will invariably take more than two years. If the challenge to the neighborhood compatibility approval is ultimately successful, the applicant will have wasted a substantial sum of money; the neighboring residents will have been subjected to the noise and inconvenience of construction; and the partial construction will be an eyesore until new approvals are obtained and the partial construction modified or replaced.

---

[2] The amended complaint, however, did not identify any change in conditions between 2008 and 2012 that might affect the City's evaluation under its neighborhood compatibility ordinance.

4

Gdowski contended the trial court could not consider the City's purported construction of PVEMC section 18.36.050 on demurrer because it was predicated on a factual determination the City actually interpreted the ordinance in such a manner—something neither alleged in the amended complaint nor properly subject to judicial notice. In addition Gdowski asserted the City's interpretation was not reasonable because PVEMC section 15.12.060 provides a building permit is valid for 18 months (and may be extended 180 days) and PVEMC section 18.36.050 provides the neighborhood compatibility approval is valid for the term of the building permit, thus giving the applicant up to four years to build the approved home, sufficient time for any litigation to be resolved. Gdowski also argued, as alleged in the amended complaint, the neighborhood compatibility ordinance emphasizes compatibility based on current conditions. Because conditions change over time, further consideration is warranted after an approval expires.

The court prepared a four-page tentative ruling sustaining the demurrer without leave to amend, which it adopted as its final order following argument by the parties. The court ruled PVEMC section 18.36.050 was ambiguous as to whether the expiration period for the approval of a neighborhood compatibility application begins on the date of city council approval or only after that approval has been "finalized for administrative and appellate review purposes." The court then found, contrary to Gdowski's argument, PVEMC section 17.04.100.H did not resolve that ambiguity because it related to a city council "decision," not the "approval" at issue in section 18.36.050. Notwithstanding the ambiguous language, however, the court concluded the City's interpretation was correct and the neighborhood compatibility approval had not yet expired because, "[b]y operation of law, approval of neighborhood compatibility applications cannot be final upon the decisions of City Council, because that would violate laws allowing for administrative and court review, which an ordinance cannot override."

In addition, the court relied upon the fundamental principle of statutory construction mandating that the court "'apply common sense to the language at hand and interpret the statute to make it workable and reasonable.'" As to this aspect of its

5

analysis, the court explained at the hearing, "[A]ny commonsense interpretation would be why should I expend as an applicant any more money given [Gdowski's] interpretation with regard to going forward with this construction project when the whole thing may be unraveled by a court. It would make no sense. And it would amount to a huge economic waste. . . . But it would be [Gdowski's] interpretation that the City and the applicant should in open defiance to the court's processes and the respect that one affords to await a decision from the court . . . to nevertheless go forward because there's . . . technical language that is going to be strictly interpreted to plaintiff's benefit to stop this entire project and which in effect says, you know, if you don't apply within two years, you are out of luck. . . . I don't think that is what was intended and while it may be subject to putting [the ordinance] back on city council's calendar to amend it, to make it absolutely clear now that this lawsuit has been brought, it still doesn't undermine what might be viewed as a reasonable interpretation of those ordinance . . . that when mandamus is engaged in as [Gdowski] has here all things have to stop. There could be no finality."

On March 29, 2013 the court entered judgment in favor of the City and Acalones and against Gdowski. Notice of entry of judgment was served and filed on April 5, 2013. Gdowski filed a timely notice of appeal.

## DISCUSSION

1. *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*McCall v. PacifiCare of Cal., Inc*. (2001) 25 Cal.4th 412, 415; *Aubry v. Tri–City Hospital Dist*. (1992) 2 Cal.4th 962, 967.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Schifando*, at p. 1081.)

6

We also review de novo issues of statutory construction or interpretation of municipal ordinances. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311 [meaning of statute presents a question of law that is reviewed de novo by appellate court]; *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [trial court's construction of statute properly subjected to independent review]; *Meyers v. Board of Administration* (2014) 224 Cal.App.4th 250, 256 [interpretation of local ordinances and municipal codes reviewed de novo].)

2. *The Trial Court Did Not Err in Reaching the Merits of the Action*

Ordinarily, the existence of an actual controversy relating to the legal rights and duties of the parties is sufficient to maintain an action for declaratory relief. (*Ludgate Ins. Co., Ltd. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 605; see Code Civ. Proc., § 1060.) Dismissal, as opposed to a declaration denying the requested relief, is disfavored when an actual controversy has been alleged: "It is the general rule that in an action for declaratory relief the complaint is sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties . . . and requests that the rights and duties be adjudged. [Citation.] If these requirements are met, the court must declare the rights of the parties whether or not the facts alleged establish that the plaintiff is entitled to a favorable declaration." (*Bennett v. Hibernia Bank* (1956) 47 Cal.2d 540, 549-550; accord, *Wellenkamp v. Bank of America* (1978) 21 Cal.3d 943, 947; see *Qualified Patients Assn. v. City of Anaheim* (2010) 187 Cal.App.4th 734, 751 ["'[a] general demurrer is usually not an appropriate method for testing the merits of a declaratory relief action, because the plaintiff is entitled to a declaration of rights even if it is adverse to the plaintiff's interest'"]; see generally 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 877, p. 294 (Witkin) ["the rule is now established that the . . . complaint is sufficient if it shows an actual controversy; it need not show that the plaintiff is in the right"].)

Nevertheless, "a trial court may properly sustain a general demurrer to a declaratory relief action without leave to amend when . . . the controversy presented can be determined as a matter of law." (*City of Fresno v. California Highway Com.* (1981)

7

118 Cal.App.3d 687, 699-700; see *Allstate Ins. Co. v. Kim W.* (1984) 160 Cal.App.3d 326, 330 [motion for judgment on the pleadings, analogous to demurrer, is "appropriate means of obtaining an adjudication of the rights of the parties in a declaratory relief action if those rights can be determined as a matter of law from the face of the pleading attacked, together with those matters of which the court may properly take judicial notice"].) The "court's opinion is, in effect, a declaration of the parties' rights." (*State Farm Fire & Cas. Co. v. Superior Court* (1987) 191 Cal.App.3d 74, 77; see *Lockheed Martin Corp. v. Continental Ins. Co.* (2005) 134 Cal.App.4th 187, 221-222, disapproved in part on another ground in *State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1036, fn. 11 ["If the appellate court's decision on the merits would necessarily result in a declaration unfavorable to the plaintiff, reversal would be an idle act. The appellate opinion is in effect a declaratory judgment"]; *Haley v. Los Angeles County Flood Control District* (1959) 172 Cal.App.2d 285, 294 [judgment will not be reversed when "'such reversal would be of no benefit to the appellant because the same judgment would have to be entered on retrial'"]; see generally Witkin, *supra*, § 878, p. 296.) Because Gdowski's action raised only a question of the interpretation of the neighborhood compatibility ordinance—indeed, the City did not dispute the truth of the factual allegations in the first amended complaint—the trial court did not err in reaching the merits of her action in ruling on the demurrer.

3. *The City Properly Interpreted Its Ordinance To Authorize Issuance of a Building Permit to Acalones More Than Two Years After City Council Approval of the Neighborhood Compatibility Application*

a. *The City's interpretation is entitled to deference in our independent review*

The governing principles of statutory interpretation are both well-established and familiar: "Our primary task in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.] We consider first the words of a statute, as the most reliable indicator of legislative intent. [Citation.] ""Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible.' [Citation.] Interpretations that lead to absurd results or

8

render words surplusage are to be avoided.  [Citation.]"  [Citation.]'"  (*Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1037; accord, *In re D.B.* (2014) 58 Cal.4th 941, 945-946 ["we 'will not give statutory language a literal meaning if doing so would result in absurd consequences that the Legislature could not have intended'"].)

To the extent the statutory language is ambiguous, "we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history."  (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272; see *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103-1105.)  "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy."  (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737; accord, *Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 388.)

A city's interpretation of its own ordinance "'is entitled to deference' in our independent review of the meaning or application of the law."  (*City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1091; see *Anderson First Coalition v. City of Anderson* (2005) 130 Cal.App.4th 1173, 1193 ["'an agency's view of the meaning and scope of its own [zoning] ordinance is entitled to great weight unless it is clearly erroneous or unauthorized'"].)  Although Gdowski alleged the City had not adopted any policy regarding the effect of litigation on the two-year approval period, as discussed she also alleged the City's current view of the meaning of the approval ordinance—that because of the pendency of *Gdowski II*, a building permit could be issued through late 2012 pursuant to the 2008 neighborhood compatibility approval—arose in connection with the early 2011 sale of the property from Aulert to Acalones.  Thus, the intent underlying the ordinance is "evidenced . . . by the manner in which the City has interpreted and applied the City Code in this instance."  (*City of Monterey*, at p. 1091.)[3]

---

[3]    As Gdowski observes in her appellate briefs, this court in *McPherson v. City of Manhattan Beach* (2000) 78 Cal.App.4th 1252, 1266, footnote 6, stated, "The City's legal arguments as a party in the lawsuit are not evidence of the City's interpretation."  Here,

b. *The City's construction of the ordinance is reasonable and supported by sound public policy*

Gdowski contends the expiration provision is unambiguous: The two-year period begins upon "approval" of the neighborhood compatibility application; "approval" is commonly defined as permission to do something or to confirm or sanction formally, which occurred at the city council hearing; and PVEMC section 18.36.050 makes no mention of a "final" approval, that is, an approval that is free from judicial challenge.[4] Even if the concept of finality is imported into PVEMC section 18.36.050, PVEMC section 17.04.100.H provides a decision by the city council, which is tantamount to an "approval," is "final." In addition, neither PVEMC section 18.36.050 nor any other provision of the municipal code authorizes an extension or tolling of the two-year period because a project opponent has challenged an approval. Gdowski argues courts have "no power to rewrite an ordinance or statute so as to make it conform to a presumed intention which is not expressed." (*County of Madera v. Superior Court* (1974) 39 Cal.App.3d 665, 668.)

Statutory language is ambiguous if it is "susceptible to more than one reasonable interpretation. . . ." (*Hoechst Celanese Corp. v. Franchise Tax Bd.* (2001) 25 Cal.4th 508, 519; accord, *City of Patterson v. Turlock Irrigation District* (2014) 227 Cal.App.4th 484, 492.) Although context is usually relevant when determining the meaning to be given ambiguous language (see *Pacific Gas Electric Co. v. County of Stanislaus* (1997)

_____

however, the City's interpretation of the effect of litigation on the two-year expiration period was not initially advanced as an argument in Gdowski's declaratory relief action but was an administrative interpretation that provided the basis for the issuance of the building permit that Gdowski challenges.

[4]     To the extent the trial court's ruling that the city council's neighborhood compatibility approval could not be final "[b]y operation of law" meant only that judicial review by a petition for writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5 was available to an aggrieved party, it was plainly correct. To the extent it intended to suggest that, in the absence of a stay of the operation of the approval, the successful applicant could not proceed with the project pending completion of such judicial review, it was not. (See, e.g., *Lomeli v. Department of Corrections* (2003) 108 Cal.App.4th 788, 798; Code Civ. Proc., § 1094.5, subd. (g).)

10

16 Cal.4th 1143, 1152), context may also be examined to determine if the language is reasonably susceptible to more than one interpretation (see *Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1371 ["[s]tatutory language which seems clear when considered in isolation may in fact be ambiguous or uncertain when considered in context"]). "[T]he 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735; accord, *People v. Elmore* (2014) 59 Cal.4th 121, 139-140; *Dye v. Caterpillar, Inc.* (2011) 195 Cal.App.4th 1366, 1376; see *Mason v. Retirement Board* (2003) 111 Cal.App.4th 1221, 1229 ["[w]e do not interpret statutes . . . in isolation"].)

Standing alone, the word "approval" generally may not be ambiguous. Read in context here, however, and in light of the reality that development approvals of all kinds are often hotly contested, "approval" is reasonably susceptible to the interpretation adopted by the City, which requires finality and excludes the time consumed by administrative appeals and judicial review. The neighborhood compatibility provisions of the municipal code (chapter 18.36) expressly authorize the "approval" of a neighborhood compatibility application by the City's planning commission. (PVEMC § 18.36.045.) After satisfying certain conditions, a project opponent may appeal that approval to the city council. (See PVEMC § 18.36.043(B).) If the city council then confirms the planning commission's decision, the municipal code contemplates the possibility of judicial review by petition for writ of mandate, as it does for all final administrative and quasi-judicial decisions made by the City after a hearing at which evidence has been taken. (PVEMC § 1.40.010.)

11

Against that backdrop, the City's intent in enacting the neighborhood compatibility ordinance is best realized by its construction that the two-year life of the approval will not be truncated or eliminated entirely because of a legal challenge. The neighborhood-friendly legislative intent articulated in the ordinance "is to preserve the natural scenic character of the city by establishing minimum standards relating to the siting and massing of either a new structure or a remodeled structure in an existing neighborhood to assure to the greatest extent practicable that the resulting structures are compatible with the neighborhoods within which they are located." (PVEMC § 18.36.010.) But the desire not to place an undue burden, financial or otherwise, on the property owner is also expressed in that section: "It is not the intent to unreasonably restrict or regulate the right of an individual property owner to determine the type of structure or addition he may wish to place or modify on his property." (*Ibid*.)

PVEMC section 18.36.040, setting forth the process for obtaining a neighborhood compatibility approval, demonstrates the City's intent that the approval process have minimal financial implications: "For initial review, applicants are encouraged to submit preliminary design proposals covering the entire lot development, both present and future, to permit the director to analyze neighborhood compatibility and the applicability of the provisions of this chapter prior to incurring the expense for detailed design drawings." A building permit, in contrast, requires completion of detailed design drawings. To compel an applicant to obtain a building permit before legal action challenging the neighborhood compatibility approval has concluded merely to extend the life of that approval—which is essentially what Gdowski's proffered interpretation would require—would directly conflict with the intent of PVEMC section 18.36.040 and would impose an unnecessary financial burden on an applicant before the basic design for the project has been confirmed. Indeed, the requirement to obtain a neighborhood compatibility approval is applicable to the construction of new homes as well as the remodeling of existing homes in excess of minimal thresholds.[5] While speculative

---

[5]     For example, a neighborhood compatibility approval is required for second-story

12

developers are undoubtedly among those who wish to construct a new residence, it is likely a significant number of applicants are existing homeowners or owner-builders. It is not within the spirit of the legislation that that these individuals, hoping to build or remodel their homes, need to incur the cost of permit-ready drawings without assurance their preliminary designs will be approved. (See *Kusior v. Silver* (1960) 54 Cal.2d 603, 620 ["[s]tatutes are to be interpreted to give a reasonable result consistent with legislative purpose"]; *City of Fresno v. Superior Court* (1984) 156 Cal.App.3d 1137, 1144 [same]; see also PVEMC § 1.04.080 ["[t]he provisions of the ordinances of the city of Palos Verdes Estates, and all proceedings under them, are to be construed with a view to effect their objects and to promote justice"].)

Gdowski's reliance on *Friends of Westhaven and Trinidad v. County of Humboldt* (2003) 107 Cal.App.4th 878 (*Friends*) to support her argument an applicant must affirmatively act to extend the life of a permit or approval is misplaced. In *Friends* a citizen group lost their challenge to the county's approval of a tentative subdivision map both in the trial court and on appeal. After the litigation had concluded and the tentative map had expired, the county approved the developer's request to stay expiration of the tentative map for the period it had been subject to litigation pursuant to Government Code section 66463.5, a provision of the Subdivision Map Act (Gov. Code, § 66410 et seq.). (*Friends*, at p. 881.) The citizen group sought a writ of mandate and injunctive relief on the ground the stay application was untimely. The Court of Appeal reversed the trial court's order granting summary judgment in favor of the county, holding the application was untimely because it had been filed after the tentative map had expired. Unlike the City's neighborhood compatibility ordinance, which has no express provision for extending an approval in any manner whatsoever, the Subdivision Map Act expressly addresses the effect of litigation on the life of the tentative map and "provides two ways in which the life of the tentative map may be expanded." (*Id.* at p. 883; see *id.* at p. 882

additions or balconies that are 80 or more square feet and project more than six feet from the existing building, as well as additions or balconies located in a required side yard. (PVEMC § 18.36.020.A.4 & A.5.)

13

[""[i]n many portions of the Act, specific time limits are set for action and, correlating consequences are established for failure to meet those time limits""].)[6] The court's conclusion the application was untimely was predicated on its interpretation of the Subdivision Map Act provisions specifically governing stays and extensions. Contrary to Gdowski's assertion, the case does not recognize a duty to take affirmative action to extend the life of a permit or approval in the absence of relevant statutory language imposing such a duty.

Gdowski's argument Aulert (the owner when the neighborhood compatibility approval expired) could have applied for a stay of the approval as provided for in Code of Civil Procedure section 1094.5, subdivision (g), is similarly unavailing. That provision permits the petitioner, the aggrieved party, in a pending mandamus action to seek a stay of an administrative decision or order pending judgment subject to the trial court's determination the stay is not against the public interest. (See Cal. Administrative Mandamus (Cont.Ed.Bar 3d ed. 2014) § 11.3, p. 11-5 ["[t]he burden is on the petitioner to establish the criteria for a stay"]; see also Code Civ. Proc., § 1094.5, subd. (h)(1) [superior court may not grant stay of an agency's decision unless court is satisfied the agency is unlikely to prevail on the merits]; cf. Code Civ. Proc., § 1094.5, subd. (g) [if an appeal is taken from an order granting the writ, the agency's decision is automatically stayed; no automatic stay on appeal from an order denying the writ].) Aulert was not the aggrieved party in *Gdowski II*, nor was he adverse to the City; he was the real party in interest. He had a neighborhood compatibility approval he believed to be valid and was not seeking to overturn or challenge it. Gdowski's argument Aulert should have sought a

---

6       Under Government Code section 66463.5, subdivision (e), the period during which litigation involving the approval of the tentative map was pending is excluded from the life of the tentative map if the stay of the time period has been approved by the local agency. Under Government Code section 66463.5, subdivision (c), a developer may appeal to the approving agency for an extension of the tentative map's life not to exceed an additional six years for reasons other than a lawsuit.

14

stay in the administrative mandamus action challenging that approval turns section 1094.5, subdivision (g), on its head.

## DISPOSITION

The judgment is affirmed.  The City of Palos Verdes Estates and Acalones are to recover their costs on appeal.


PERLUSS, P. J.


We concur:



WOODS, J.



ZELON, J.